## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENTAL WIZARD, P.C., DENTAL WIZARD G PC and DENTAL WIZARD HOLDING, INC., | Civil Action |
| | No. |
| Plaintiffs, | |
| vs. | |
| YEFIM ARANBAYEV, ARTUR MARTIROSYAN, ANNA CHISTYAKOVA a/k/a ANIA CHISTYAKOVA, DIAMANTE DENTAL INC., PARADISE DENTAL INC., and DENTAL EMPIRE, INC., | |
| Defendants. | |

## COMPLAINT

Plaintiffs, Dental Wizard, P.C. ("DW PC"), Dental Wizard G PC ("DW-G PC") and Dental Wizard Holding, Inc. ("DW Holding"; and together with DW PC and DW-G PC, the "Plaintiffs"), by and through their undersigned counsel, hereby bring the following Complaint ("Complaint") against defendants Yefim Aranbayev ("Aranbayev"), Artur Martirosyan ("Martirosyan"), Anna Chistyakova a.k.a. Ania Chistyakova ("Chistyakova"), Diamante Dental Inc. ("Diamante"), Paradise Dental Inc. ("Paradise") and Dental Empire, Inc. ("Dental Empire") (collectively, the "Defendants") for (i) violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), (ii) violation of the Computer Fraud and Abuse Act, (iii) fraud, (iv) breach of contract, (v) aiding and abetting breach of contract, (vi) contractual indemnification, (vii) tortious interference with contracts and business relations, (viii) conversion, (ix) unjust enrichment, (x) civil conspiracy, and (xi) detrimental reliance/promissory and equitable estoppel, and in support thereof avers as follows:

## THE PARTIES

1.      Plaintiff DW PC is a Pennsylvania professional corporation with a business address at 1235 Bridgetown Pike, Feasterville, PA 19053.

2.      Plaintiff DW-G PC is a Pennsylvania professional corporation with a business address at 1235 Bridgetown Pike, Feasterville, PA 19053.

3.      Plaintiff DW Holding is a Pennsylvania corporation with a business address at 70 Bellwood Drive, Feasterville, PA 19053.

4.      Plaintiffs are affiliated. DW-G PC is the successor in interest to the rights and claims of DW PC under the PC Purchase Agreement (as defined below) asserted in this action.

5.      Upon information and belief, Defendant Aranbayev is an adult individual and a Pennsylvania licensed dentist with a residence at 17 Eagleton Farm Road, Newtown, PA 18940.

6.      Upon information and belief, Defendant Martirosyan is an adult individual and Pennsylvania resident with an address at 57 Bowman Drive, Feasterville-Trevose, PA 19053.

7.      Upon information and belief, Defendant Chistyakova is an adult individual and Pennsylvania resident with an address at 57 Bowman Drive, Feasterville-Trevose, PA 19053. Upon information and belief, Defendant Martirosyan and Defendant Chistyakova are husband and wife.

8.      Upon information and belief, Defendant Diamante is a Pennsylvania corporation with a registered office address at 2338 N. Front Street, Philadelphia PA 19133.

9.      Upon information and belief, Defendant Paradise is a Pennsylvania corporation with a registered office address at 13109 Bustleton Avenue, Apt. A24, Philadelphia PA 19116.

10.     Upon information and belief, Defendant Dental Empire is a Pennsylvania corporation with a registered office address at 13066 Townsend Road, Unit K, Philadelphia PA 19154.

11.     Upon information and belief, each of Defendants Aranbayev, Chistyakova and Martirosyan was an actual and/or de facto shareholder, officer and/or director of each of Defendants Diamonte, Paradise and/or Dental Empire, and each was directly and/or indirectly involved in the unlawful conduct alleged herein.

12.     Upon information and belief, Defendants Diamante, Paradise and/or Dental Empire are mere alter-egos and were being used as instrumentalities to perpetrate a fraud by Defendants Aranbayev, Chistyakova and Martirosyan and/or their affiliates on Plaintiffs and others, as more fully described herein.

## JURISDICTION AND VENUE

13.     The Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and the Computer Fraud and Abuse Act, 18 U.S.C. 1030 et seq. This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over the Defendants. Defendants reside in, have conducted business in, and have had continuous and systematic contacts with the Commonwealth of Pennsylvania and this District.   Defendants have purposefully availed themselves of the privilege of doing business in Pennsylvania, and critical elements of Defendants' wrongdoing occurred in this District. All of the Defendants except Defendant Chistyakova have agreed contractually to jurisdiction in this District under the Purchase Agreements, as defined below.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this District, a substantial part of the property that is the subject of the action is situated in this

District, and Defendants reside in and have sufficient contacts with this District such that Defendants may be found here.

## THE FACTS

### I.      The Parties

16.     At all material times prior to January 11, 2018, the Defendants owned and operated a dental practice known as Diamante Dental at 100 E. Allegheny Avenue, Philadelphia, PA 19134 ("Diamante Office").

17.     At all material times prior to January 11, 2018, the Defendants owned and operated a dental practice known as Paradise Dental at 2338 N. Front Street, Philadelphia, PA 19133 ("Paradise Office"; and together with the Diamante Office, collectively the "Subject Dental Businesses").

18.     On January 11, 2018, Plaintiffs DW PC and DW Holding contemporaneously acquired substantially all of the assets of the Subject Dental Businesses, including, without limitation, the client list/client base and all billing and treatment records relating to such clients, from the applicable Defendants under the terms and conditions of two related asset purchase agreements dated as of January 11, 2018 ("Purchase Agreements").

19.     Plaintiff DW PC entered into one Purchase Agreement ("PC Purchase Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**.[1]

20.     Plaintiff DW Holding entered into the other Purchase Agreement ("Holding Purchase Agreement"), a true and correct copy of which is attached hereto as **Exhibit B**.

21.     After the January 11, 2018 closings under the Purchase Agreements, Plaintiff DW-G PC succeeded to the rights and claims of Plaintiff DW PC under the PC Purchase

---

[1]     For this Complaint, certain portions of the PC Purchase Agreements have been redacted for client, staff and related privacy and confidentiality purposes.

Agreement.

## II.   <u>Defendants' Fraudulent Scheme</u>

22.     Prior to the January 11, 2018 closings and unbeknownst to Plaintiffs, the Defendants owned and operated the Subject Dental Businesses and/or their other affiliated dental office businesses as part of an unlawful racketeering enterprise intended to defraud the Plaintiffs, the government, insurers/third-party payers and/or others, as more fully described herein, including, without limitation, by:

(a)     illegally billing and collecting money from insurers/third-party payers through the mail and/or electronic communication for more expensive and/or unnecessary dentistry services when a more cost-effective service was appropriate.

(b)     illegally billing and collecting money from insurers/third-party payers through the mail and/or electronic communication for dentures and/or other dentistry services which were never rendered or completed.

(c)     illegally billing and collecting money from insurers/third-party payers through the mail and/or electronic communication for dentistry services allegedly provided by Defendant Aranbayev, when in fact the dentistry services were provided by other dentists who often times were not credentialed to bill for such dentistry services with the applicable insurer/third-party payer.

(d)     illegally submitting x-rays and other supporting documents to third-party payers through the mail and/or electronic communication in connection with insurer/third-party payer audits, investigations, actions and/or

proceedings when the supporting materials related to another patient (i.e. not the patient allegedly receiving the dentistry services).

    (e)    illegally submitting false claims for dentistry services through the mail and/or electronic communication in violation of the federal False Claims Act and/or other applicable law, standard industry practices and/or contractual terms with insurers/third-party payers.

    (f)    illegally falsifying employment, payroll, and/or other business records and information in order to underpay their employed dentists and/or other staff.

    (g)    illegally misclassifying employees as independent contractors.

    (h)    illegally filing false and/or misleading tax returns through the mail and/or electronic communication with the Internal Revenue Service and/or other taxing authorities.

23.    The Defendants fraudulent and unlawful conduct with respect to the Subject Dental Businesses caused the financial information presented to the Plaintiffs in connection with the Purchase Agreements to be false and misleading by, *inter alia*, overstating revenues and prospects, and understating expenses and liabilities, of the Subject Dental Businesses and the related assets acquired by the Plaintiffs under the Purchase Agreements.

24.    Prior to the January 11, 2018 closings and unbeknownst to Plaintiffs, the Subject Dental Businesses were audited, investigated, reprimanded and/or disciplined by several key insurers/third-party payers including those administering federal funds for dentistry services.

25.    For instance, by letter dated June 1, 2017, the Defendants received notice from insurer/third-party payer Dental Benefits Providers (an affiliate of United Healthcare Services,

Inc.) that Defendants were submitting treatment codes at rates deviating significantly from their market peer group average and thus were being put on pre-payment review.  The June 1, 2017 letter enclosed a Peer Comparison Report showing the significant deviations between the Defendants billing patterns and those of their peers. Defendants were required to but never disclosed these material adverse events to the Plaintiffs in breach of the Purchase Agreements. A true and correct copy of the June 1, 2017 letter is attached hereto as **Exhibit C**.

26.     In addition, by letter dated October 31, 2017, the Defendants were notified that insurer/third-party payer Keystone First was auditing and/or investigating Defendant Diamante in connection with Medicaid claims and requesting supporting records. Defendants were required to but never disclosed these material adverse events to the Plaintiffs in breach of the Purchase Agreements. A true and correct copy of the October 31, 2017 letter is attached hereto as **Exhibit D**.

27.     Moreover, insurer/third-party payer Avesis Third-Party Administrators, Inc. ("Avesis") audited, investigated and/or took adverse action against the Defendants prior to the January 11, 2018 closings. Avesis insured a majority of the clients/patients of the Subject Dental Businesses, numbering in the thousands, who were supposed to be acquired as part of the sale assets under the PC Purchase Agreement.

28.     In the summer or early fall of 2017, Avesis began rejecting all or substantially all of the dentistry services claims submitted by the Defendants, presumably due to the Defendants' unlawful conduct more fully described herein.  This resulted in loss of revenues, loss of profits, loss of business prospects, reputational damage and other material adverse changes to the Subject Dental Businesses and the related sale assets under the Purchase Agreements. Defendants were required to but never disclosed these material adverse issues and changes to the Plaintiffs in

breach of the Purchase Agreements.

29.     Avesis also put Defendant Aranbayev and other dentists employed by Defendants Diamante and Paradise on probation.  While Defendant Aranbayev and the other Defendants received probation notices, they concealed them from the dentists and staff, presumably to avoid disruption or reduction in their productivity and billing.

30.     In response to requests for supporting documents and data from the investigating insurers/third-party payers, Defendant Anna Chistyakova and the other Defendants created and submitted (via mail and/or electronically) false treatment records as if such were contemporaneously prepared by the employee dentists at the time the subject dentistry services were rendered. In fact, these records were fraudulent and intended to conceal the Defendants' unlawful conduct more fully described herein.

31.     These audits, investigations, actions and/or proceedings of the insurers/third-party payers resulted in, *inter alia*, claims of overpayments and demands for refunds, recoupments and reimbursements from the Defendants, which was concealed from the Plaintiffs.

32.     In 2017, sensing the impending collapse of the Subject Dental Businesses as a result of their unlawful conduct, the Defendants began to actively market the Subject Dental Businesses for sale, and Plaintiffs responded to these marketing efforts.

33.     During the course of due diligence prior to the January 11, 2018 closings, the Defendants were required to but did not disclose the audits, investigations, actions, proceedings, pre-payment reviews, dentist probations, claim denials, overpayments, demands for refunds/recoupments/reimbursements and the distressed financial and operational condition and prospects of the Subject Dental Businesses and related sale assets from the Plaintiffs. Instead, the Defendants painted a false picture that the Subject Dental Businesses, the related sale assets and

their future prospects were bright and positive, when they were not.

34.     Through the financial information and documents produced in due diligence and otherwise, Defendants promised, represented and warranted to Plaintiffs that the Diamante Office assets yielded (and would continue to yield after closing) approximately $1,000,000 in gross revenues, and the Paradise Office assets yielded (and would continue to yield after closing) approximately $750,000-$800,000 in gross revenues. However, as more fully described herein, these promises, representations and warranties proved to be knowingly false and misleading.

35.     Defendants were obligated to identify their insurer/third party payer relationships on Schedule 4(r) under the PC Purchase Agreement, but they never did. Defendants intentionally avoided and delayed producing the schedule. They promised to bring it to closing, but then claimed to have forgotten. They promised to produce it immediately after the closing, but never did. This was all a sham and part of Defendants' scheme to conceal the distressed condition of their insurer/third-party payer relationships from Plaintiffs prior to closing.

36.     On January 11, 2018, and based upon the false and misleading statements, representations and warranties of Defendants and their other fraudulent inducements, the signatory Plaintiffs executed the Purchase Agreements and closed on the transactions contemplated thereunder.

37.     Immediately following the January 11, 2018 closings, DW-G PC hired Defendants' employee dentists as contemplated under the PC Purchase Agreement, unbeknownst of their probations and licensing problems.[2]

38.     About a week or so after the January 11, 2018 closings, the Plaintiffs received notice that Avesis was terminating the provider agreements with the hired dentists on probation.

---

[2]     To date, only one of these dentists is employed with DW-G PC due, in whole or in part, to the unlawful conduct of Defendants and its resulted harm to Plaintiffs.

Avesis stated that Defendants were on probation for a long time. Avesis further stated that it would not credential any dentists at the Diamante and Paradise office locations due to the unlawful conduct of the Defendants.

39.     Avesis's termination of business relations and refusal to credential dentists at the Diamante and Paradise offices caused the Plaintiffs to lose thousands of clients, representing a substantial majority of the acquired client base and revenues of the dental offices.

40.     Without Avesis and its clients, the Diamante office suffered unsustainable loss and was forced to cease operation in July 2018. This resulted in the loss of approximately $1,000,000 in anticipated annual gross revenues, staff layoffs, termination costs and expenses and other harm to Plaintiffs.

41.     To date, the Paradise office remains operational, but has suffered significant losses in revenues, operations, prospects and otherwise due to the loss of Avesis and its clients and the unlawful conduct of Defendants.

42.     Plaintiffs also discovered after the closings that the hired dentists' production/billing levels were significantly less than represented and warranted by Defendants on Schedule 4(o) of the PC Purchase Agreement.

43.     In order to conceal their unlawful conduct following the closings, the Defendants unlawfully accessed the Plaintiffs' computer systems and offices to destroy electronic and other client/patient records and data, which was a part of the sale assets under the PC Purchase Agreement.

44.     When Plaintiffs discovered the unauthorized computer access and destruction of electronic documents and data, Plaintiffs hire a computer consultant to investigate the unauthorized computer access, to replace certain computers and devices, and prevent further

unauthorized access by Defendants.

45.     After the closings, the Defendants attempted to silence their former staff about what they had witnessed by, *inter alia*, demanding they execute non-disclosure agreements and through other intimidation tactics. A true and correct copy of a non-disclosure agreement dated January 12, 2018 that the Defendants attempted to get the office manager/biller to sign is attached hereto as **Exhibit E**.

46.     Defendants also failed to perform the transitional and post-closing services under Section 5 of the Purchase Agreements by, *inter alia*, refusing to cooperate with the transition of business relationships and refusing to provide information about the sold assets.

47.     After the January 11, 2018 closings, clients of the Subject Dental Businesses began complaining that Defendants failed to complete their dentures from prior years. Plaintiffs discovered that Defendants billed and collected money from insurers/third-party payers for dentures but failed to complete the services. Some of these clients were not eligible to receive additional insurer funds for corrective denture services, which caused harm to Plaintiffs' reputation and business.

48.     After the closings, and due to Defendants' unlawful conduct, Plaintiffs were forced to make unanticipated investments and incur unanticipated losses in connection with the transactions contemplated under the Purchase Agreements.

49.     Had Plaintiffs known about Defendants' unlawful conduct and scheme more fully described herein, and the true condition (operational, financial and otherwise) and prospects of the Subject Dental Businesses and the related assets acquired under the Purchase Agreements, the Plaintiffs would have never entered into the Purchase Agreements or consummated the transactions contemplated thereby.

50.     By letter dated February 15, 2018, the Plaintiffs notified the Defendants about the discovery of their unlawful conduct and demanded indemnification and other remedies under the Purchase Agreements and applicable law. A true and correct copy of such February 15, 2018 letter is attached hereto as **Exhibit F**.

51.     However, the Defendants refused to remedy their defaults or honor their indemnification and other obligations under the Purchase Agreements and applicable law.

52.     As more fully described herein, Defendants have breached legal duties to the Plaintiffs under the Purchase Agreements and applicable law, and as a consequence Plaintiffs have suffered and will continue to suffer irreparable harm, loss and damage, including, without limitation, loss of funds, loss of business value, loss of data and information, loss of past and future revenues and profits, loss of reputation, and loss of goodwill, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Complaint.

53.     The actions and conduct of the Defendants, which induced the Plaintiffs' detrimental reliance thereon, was outrageous, fraudulent, malicious and reckless, thereby entitling Plaintiffs to punitive damages as well as compensatory damages, consequential damages, indemnification, attorney's fees and costs and other damages and relief under the Purchase Agreements and applicable law.

54.     The Defendants' unlawful conduct and resulting harm to Plaintiffs was foreseen or foreseeable by Defendants, but disregarded so they could improperly gain and benefit at the expense of Plaintiffs.

**COUNT I**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT, 18 U.S.C. §1962(c) ("RICO")**
**(Plaintiffs v. All Defendants)**

55.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

56.     18 U.S.C. § 1962(c) states that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

57.     Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

58.     18 U.S.C. § 1964(c) creates a private right of action for violation of the RICO statute.

59.     As more fully described herein, the Defendants violated 18 U.S.C. § 1343 by, *inter alia*, devising or intending to devise a scheme or artifice to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations or promises, and the Defendants knowingly caused to be transmitted by means of mail and/or wire communications in interstate commerce, writings, signs, and signals for the purpose of executing the scheme or artifice, or attempting to do so.  The aforementioned fraud was conducted through, *inter alia*, communications by mail and/or wire for purposes of 18 U.S.C. § 1343, and the Plaintiffs and other third parties reasonably relied on such fraudulent and deceptive communications initiated by the Defendants.

60.     As more fully described herein, the Defendants violated 18 U.S.C. § 1344 by, *inter alia*, devising or intending to devise a scheme or artifice to defraud a financial institution, or to obtain the money and funds under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

61.     Defendants' scheme involved numerous false and misleading statements, and/or omitted to state material facts when required, in order to fraudulently induce third-party payers administrating government funds for the reimbursement or payment of dentistry services through the submission of false claims in violation of the False Claims Act as more fully described herein. The Defendants' fraudulent inducement of the Plaintiffs to enter into the Purchase Agreements based on knowingly false and misleading material representations that the Subject Dental Businesses were conducted in a lawful manner when in fact they were not, all in an effort to convert funds of Plaintiffs and/or other third parties held in financial institution(s) for their own personal benefit and with full knowledge that Defendants were defrauding such insurers/third-party payers administrating government funds for the reimbursement or payment of dentistry services and the Plaintiffs in violation of the Purchase Agreements and applicable law.

62.     Defendants are engaged in interstate commerce as a result of their operation of the Subject Dental Businesses and billing for dentistry services of out-of-state entities such as Avesis (based in Maryland) that is administering governmental funds for dental services, as part of the scheme more fully described herein.

63.     Defendants, and each of them, have committed numerous predicate acts for violation of the RICO statute, including mail, wire and bank fraud, as more fully described herein.

64.     The facts demonstrate that Defendants unlawfully, willingly, knowingly and/or with reckless disregard performed acts and/or omissions, and conducted or participated in the conduct, directly or indirectly, of the business and affairs of Subject Dental Businesses and their other dental offices through a pattern of racketeering activity, as more fully described above.

65.     Defendants, in their pattern of racketeering activity, regularly used interstate telephone and facsimile transmission lines, cellular phones, and Internet transmissions, while engaging in interstate commerce for the purpose of committing mail, wire, investment, bank and/or other fraud and/or deceit, and conspiring to commit mail, wire, investment, bank and/or other fraud and/or deceit, as described more fully herein and actionable under the RICO statute.

66.     The pattern of racketeering activity for which the Plaintiffs seek legal recourse involves multiple related predicate acts over the course of several years, all constituting mail fraud, wire fraud, investment fraud, bank fraud and other actionable conduct defined by 18 U.S.C. §§ 1343 and 1344, which directly caused financial harm to the Plaintiffs.

67.     As a direct and proximate result of the aforementioned RICO conduct, the Plaintiffs have suffered substantial damages.

**COUNT II**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**(Plaintiffs v. All Defendants)**

68.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

69.     Plaintiffs' computers and computer systems used by Defendants as part of their transitional and post-closing services under Section 5 of the Purchase Agreements constitute "protected computers" within the meaning of 18 U.S.C.A. § 1030(e) because they are computers used in interstate or foreign commerce or communication.

70.     Defendant Martirosyan and/or the other Defendants knowingly, intentionally, and with the intent to defraud Plaintiffs directly accessed Plaintiffs' computers after the January 11, 2018 closings in order to conceal their unlawful conduct, including, without limitation, by deleting patient service, billing and other records acquired under the PC Purchase Agreement.

71.     The accessing of Plaintiffs' computers by Defendants was without authorization or exceeded Defendants' authorized access, and was in furtherance of the Defendants' fraudulent scheme more fully set forth herein.

72.     Defendants' conduct caused damage to said computers and computer systems, by impairing the integrity and/or availability of data and information contained therein, and caused Plaintiffs to engage a computer consultant to investigate, repair, replace and/or limit access of the Defendants to such computers and computer systems.

73.     As a result, Defendants furthered their intended fraud upon Plaintiffs and obtained and destroyed information and data of value and otherwise caused harm to Plaintiffs in excess of $5,000.

**COUNT III**
**FRAUD**
**(Plaintiffs v. All Defendants)**

74.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

75.     In furtherance of their unlawful and fraudulent scheme as more fully set forth above, *inter alia*, the Defendants made numerous misrepresentations, actions and omissions to the Plaintiffs including, *inter alia*, by:

> (a)     deceiving the Plaintiffs into believing that the Subject Dental Businesses and related sale assets were conducted in a lawful manner, when in fact there was significant fraud in the rendering and billing of dentistry services that resulted in the Plaintiffs' loss of Avesis, its client base, related revenues and profits and caused other harm to Plaintiffs and the sale assets under the Purchase Agreements; and

(b)     misrepresenting and overstating the Defendants' operational and financial condition and success when in fact the Defendants knew, or ignored the likelihood that, the Subject Dental Businesses and sale assets under the Purchase Agreements were and would be substantially damaged after the closings through the known or anticipated loss of Avesis and its related client list/client base and dentist probations and licensing issues; and

(c)     misrepresenting and overstating the financial statements, tax returns and operational and financial condition and success of the Subject Dental Businesses and related sale assets by creating false documents and records that caused a material overstatement of revenues and/or a material understatement of expenses of the Subject Dental Businesses and sale assets under the Purchase Agreements; and

(d)     concealing the Defendants' intention to access the computer systems of the Plaintiffs after the January 11, 2018 closings in order to destroy patient billing records and other electronic data in order to conceal the Defendants' unlawful conduct; and

(e)     concealing the dire operational and financial condition of the Subject Dental Businesses and related sale assets resulting from audits, investigations, actions, proceedings, pre-payment reviews and related adverse actions of insurers/third-party payers prior to the January 11, closings; and

(f)     knowingly concealing the investigations, probations and anticipated termination of billing privileges, credentialing and participation with

Avesis, the crown jewel insurer/third-party payer of the Subject Dental Businesses with whom a majority of the client base was insured, from the Plaintiffs in violation of the Purchase Agreements and applicable law; and

(g)    knowingly failing to provide the promised client base, staff and other sale assets under the Purchase Agreements to the Plaintiffs in the condition represented and warranted under the Purchase Agreements.

76.    Plaintiffs believe and therefore aver that the aforesaid misrepresentations, actions and omissions were material, false and knowingly and intentionally made by the Defendants to the Plaintiffs.

77.    Plaintiffs believe and therefore aver that at the time of the misrepresentations and omissions, the Defendants knew, or recklessly disregarded the fact, that these misrepresentations and omissions would mislead Plaintiffs, and that Plaintiffs would act in reliance upon them.

78.    Plaintiffs reasonably relied upon these material misrepresentations and omissions.

79.    As a direct and proximate result of such reliance, Plaintiffs have been damaged.

**COUNT IV**
**BREACH OF CONTRACT**
**(Plaintiffs v. All Defendants except Defendant Chistyakova)**

80.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

81.    The foregoing conduct constitutes a breach or violation of various provisions the Purchase Agreements by the signatory Defendants to such agreements, including, *inter alia*:

(a)    the representations and warranties contained in Sections 4(c), 4(d), 4(e), 4(h), 4(i), 4(j), 4(n), 4(o), 4(p) and 4(s) of the PC Purchase Agreement (and the corresponding representations and warranties in the Holding

Purchase Agreement, as applicable) relating to the lawful operation of the Subject Dental Businesses and their condition (financial and otherwise); and

(b) the indemnification provision set forth in Section 6 of the Purchase Agreements.

82. Defendants are continuing to violate their contractual and other obligations to the Plaintiffs under the Purchase Agreements.

83. As a consequence of the foregoing, the Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and have sustained damages, which include, but are not limited to, loss of clients, loss of value to the purchased assets, loss of business opportunities and prospects, loss of past and future profits, damage to reputation, and/or loss of good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Complaint.

84. The Purchase Agreements provide for the recovery by Plaintiffs of, *inter alia*, damages, reasonable attorney's fees and indemnification for losses and harm suffered by the Plaintiffs.

### COUNT V
### AIDING AND ABETTING BREACH OF CONTRACT
### (Plaintiffs v. Defendant Chistyakova)

85. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

86. All of the Defendants except Defendant Anna Chistyakova owed contractual duties and obligations to the Plaintiffs under the Purchase Agreements which were breached and violated, as more fully described above.

87.     Defendant Anna Chistyakova aided and abetted such breach in violation of such contractual duties and obligations under the Purchase Agreements, including, without limitation, by participating in the fraud including the creation and dissemination of false and misleading information and documents relating to the Subject Dental Businesses and the purchased assets to the Plaintiffs, governmental bodies and others, as more fully described above.

88.     The other Defendants' actions were undertaken for their own personal gain and the gain of Defendant Anna Chistyakova, without privilege and to the detriment of Plaintiffs.

89.     As a direct and proximate result of Defendant Anna Chistyakova's aiding and abetting the breach in violation of the other Defendants' contractual duties to the Plaintiffs under the Purchase Agreements, Plaintiffs have been significantly damaged.

**COUNT VI**
**CONTRACTUAL INDEMNIFICATION**
**(Plaintiffs v. All Defendants except Defendant Chistyakova)**

90.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

91.     Section 6 of the Purchase Agreements entitles Plaintiffs to indemnification for all losses, costs, expenses, claims, damages, obligations and liabilities, including interest, penalties and reasonable attorneys' fees and disbursements which Plaintiffs suffer, incur or become subject to, that arise out of or relate to:

(a)     any inaccuracy in or any breach of a representation or warranty by the signatory Defendants; and

(b)     any breach or nonfulfillment of any material covenant, agreement, undertaking or obligation by any of the signatory Defendants; and

(c)     any and all liabilities of Defendants and/or Plaintiffs to any governmental

agency, insurer or other payer for overpayments of amounts for services rendered or goods provided by Defendants or the Subject Dental Businesses prior to the January 11, 2018 closings; and

(d)     any and all acts, omissions, circumstances, conditions or state of affairs existing or occurring prior to the January 11, 2018 closing, including, without limitation, any liability for dentistry services or duties of the Defendants and/or their staff, employees, agents or personnel prior to the January 11, 2018 closings; and

(e)     any and all acts, omissions, circumstances, conditions or state of affairs created in whole or in part by the Defendants and/or their staff, employees, agents or personnel.

92.     As more fully described herein, the Defendants have caused inaccuracies and breaches in representations and warranties in the Purchase Agreements, which has harmed Plaintiffs and entitles them to indemnification under the Purchase Agreements.

93.     As more fully described herein, the Defendants breached and failed to fulfill material covenants, agreements, undertakings and obligations in the Purchase Agreements, which has harmed Plaintiffs and entitles them to indemnification under the Purchase Agreements.

94.     As more fully described herein, the liabilities of Defendants to insurers, third-party payers and/or governmental bodies relating to overpayments for dentistry services prior to the January 11, 2018 closings has harmed the Plaintiffs and entitles them to indemnification under the Purchase Agreements.

95.     As more fully described herein, the actions, omissions, circumstances, conditions

and state of affairs existing or occurring prior to the January 11, 2018 closings, including Defendants' unlawful conduct relating to the rendering of dentistry services in the Subject Dental Businesses and otherwise, has harmed Plaintiffs and entitles them to indemnification under the Purchase Agreements.

96.     As more fully described herein, the actions, omissions, circumstances, conditions and state of affairs created in whole or in part by the Defendants and/or their staff, employees, agents or personnel has harmed Plaintiffs and entitles them to indemnification under the Purchase Agreements.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS RELATIONS**
**(Plaintiffs v. All Defendants)**

97.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

98.     Plaintiffs have and/or had a valid and continuing actual or prospective contractual and business relations with their actual or prospective clients, staff and/or insurers/third-party payers acquired as part of or relating to the purchased assets or transactions contemplated by the Purchase Agreements.

99.     Defendants knew and continue to know of the existence of these contractual and business relationships, actual and prospective.

100.     Despite this knowledge, Defendants unlawful conduct more fully described above was the proximate cause of the termination of the contractual and/or business relationships of such clients, employees and/or insurers/third-party payers that were acquired or supposed to be acquired or otherwise received by one or more of the Plaintiffs under the Purchase Agreements, to the significant detriment of Plaintiffs.

101.    Defendants' actions were and are without privilege or justification.

102.    As a result of Defendants' conduct, Plaintiffs' reputation, assets, business opportunities, business prospects, business valuation and other rights and assets have been reduced, diminished or lost altogether.

103.    The foregoing conduct by Defendants constitutes tortious interference with Plaintiffs' contracts and business relations, actual or prospective.

104.    As a consequence of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and have sustained damages including but not limited loss of clients, loss of value, loss of valuable business and opportunities, loss of past and future profits, damage to reputation, assets, business opportunities, business prospects, business valuation and other rights and assets in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Complaint.

**COUNT VIII**
**<u>CONVERSION</u>**
**(Plaintiffs v. All Defendants)**

105.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

106.    As described above, some or all of the Defendants, with the complicity and assistance of the other Defendants and third parties, stole and converted Plaintiffs' electronic and other patient records and other asserts acquired or which should have been acquired by the Plaintiffs under or in connection with the Purchase Agreements, all without privilege, justification or permission.

107.    As a direct and proximate result of the aforementioned conversion of Defendants, Plaintiffs have been harmed.

## COUNT IX
## UNJUST ENRICHMENT
### (Plaintiffs v. All Defendants)

108.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

109.    At all material times hereto, Defendants benefited from the ill-gotten gains of their improper and unlawful scheme, as more fully set forth above.

110.    As a result, Defendants have received significant funds and other gains from the Plaintiffs and have been unjustly enriched at the expense of Plaintiffs, thus entitling Plaintiffs to damages.

111.    Plaintiffs have no adequate remedy at law and injustice can only be avoided by compelling Defendants to compensate Plaintiffs for damages in an amount to be determined at trial.

## COUNT X
## CIVIL CONSPIRACY
### (Plaintiffs v. All Defendants)

112.    Plaintiffs incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

113.    The Defendants formed and operated a malicious combination with a common purpose to injure Plaintiffs by performing unlawful acts and violating the contractual, statutory and common law rights of Plaintiffs and violations of state and federal laws, as more fully described above.

114.    The foregoing conduct of the Defendants was performed with intent to injure Plaintiffs or with a knowing disregard that injury would occur to the Plaintiffs, and was without justification or privilege.

115.    One or more of the Defendants, in fact, engaged in overt unlawful acts and conduct that violated the contractual, statutory and common law rights of Plaintiffs as described above, causing actual harm to Plaintiffs.

116.    By virtue of the formation and operation of this conspiracy by the Defendants, and as a consequence of the above described wrongful acts and conduct and the harm and injury caused to Plaintiffs thereby, each Defendant as a participant in this conspiracy is liable as a joint tortfeasor for each and every one of the above-described acts committed by each other Defendant/co-conspirator.

117.    As a consequence of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable harm and loss, and has sustained damages including, but not limited to, loss of assets, loss of business value and prospects, loss of business opportunities, loss present and future profits, and loss of good will, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of filing of this Complaint.

**COUNT XI**
**DETRIMENTAL RELIANCE/PROMISSORY AND EQUITABLE ESTOPPEL**
**(Plaintiffs v. All Defendants except Defendant Chistyakova)**

118.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

119.    Defendants made one or more promises, statements, actions and/or omissions to Plaintiffs, as more fully set forth herein.

120.    Defendants reasonably expected that such promises, statements, actions and/or omissions would induce action on the part of Plaintiffs, and in fact Plaintiffs did reasonably act upon such promises, statements, actions and/or omissions, as more fully set forth herein.

121.    Such promises and statements should be enforced against Defendants in order to

avoid injustice to Plaintiffs.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request judgment in their favor as follows:

(a)     Compensatory and other damages in their favor and against Defendants, jointly and severally, in an amount to be determined at trial; and

(b)     Treble damages and other relief under the RICO statute; and

(c)     Punitive damages in their favor and against Defendants, jointly and severally, in an amount to be determined at trial; and

(d)     Indemnification under the Purchase Agreements in an amount to be determined at trial; and

(e)     An injunction preventing the Defendants from unlawfully accessing Plaintiffs' computer systems and other relief under the Computer Fraud and Abuse Act; and

(f)     Attorneys' fees, court costs, expert witness fees, interest and other damages and sums recoverable under the Purchase Agreements and applicable law; and

(g)     Such other relief as the Court deems equitable, just and proper.

Respectfully submitted,

TINOVSKY LAW FIRM

Dated: July 17, 2018          By: _____

By: Vladislav Tinovsky, Esquire
Attorney I.D. No.: 85671
Five Neshaminy Interplex
Suite 205
Trevose, PA 19053
(215) 568-6860
*Attorneys for Plaintiffs*

# EXHIBIT A

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "Agreement"), dated as of January 11, 2018 ("Effective Date") by and among (1) Diamante Dental Inc., a Pennsylvania professional corporation ("DDI"), with a principal place of business at 100 E. Allegheny Avenue, Philadelphia, PA 19134, (2) Paradise Dental Inc., a Pennsylvania professional corporation (the "PDI"; and together with DDI, collectively "Sellers"), with a principal place of business at 2338 N. Front Street, Philadelphia, PA 19133, (3) Yefim Aranbayev, D.D.S., a Pennsylvania resident ("Sellers' Shareholder"), and (4) Dental Wizard, P.C., a Pennsylvania professional corporation ("Buyer").

## RECITALS:

**WHEREAS**, the Sellers are professional corporations rendering dentistry services in their respective office locations in Philadelphia, Pennsylvania (collectively, "Sellers' Business"), and the Sellers' Shareholder is a licensed dentist in the Commonwealth of Pennsylvania and the owner of 100% of the issued and outstanding capital stock of the Sellers. Sellers are managed in whole and/or in part by Artur Martirosyan and Dental Empire, Inc. (collectively, the "Sellers' Managers").

**WHEREAS**, Buyer wishes to purchase all the Sale Assets (as defined below) relating to the Sellers' Business, and the Sellers wish to sell the Sale Assets to the Buyer, all under the terms and conditions set forth in this Agreement.

**NOW THEREFORE**, intending to be legally bound hereby, the parties hereto agree as follows:

1. **SALE ASSETS.**

    a.    Sellers hereby sell, convey, assign, transfer and deliver to Buyer, and Buyer hereby acquires and purchases from Sellers, all right, title, and interest of Sellers in and to the assets (collectively, the "Sale Assets") described below:

        (i)    the assets listed on Schedule 1(a)(i);

        (ii)    the names, logos and all related intellectual property and other rights in and to the names and/or marks of "Diamante Dental" and "Paradise Dental";

        (iii)    telephone and fax numbers for Sellers at the Office Locations, including, without limitation, (A) phone numbers 215-995-2725 and 267-886-9474, and (B) fax numbers 215-560-8858 and 267-318-7494;

        (iv)    the domains and email addresses of Sellers, including, without limitation, (A) domains myparadisedental.com and diamantedental100.wixsite.com and (B) emails

1

diamantedental100@gmail.com           and
paradise.dental2013@gmail.com;

(v)     the Sellers' client/patient lists, client/patient records and charts, client/patient billing records, and any related documents necessary or appropriate to render the specific professional service of dentistry;

(vi)    all of Sellers' right, title and interest in: (A) the real property leases for DDI's office location at 100 E. Allegheny Avenue, Philadelphia, PA 19134 ("DDI Office") and PDI's office location at 2338 N. Front Street, Philadelphia, PA 19133 ("PDI Office") (collectively, "Office Leases"), and all rental and other deposits relating to such Office Leases on account with the respective landlords (collectively, the "Lease Deposits"), and (B) the other contracts of Sellers listed hereto on Schedule 1(a)(vi) (collectively, "Assumed Contracts");

(vii)   all accounts receivable of the Sellers relating to goods and/or services provided prior to and through the time of Closing ("Accounts Receivable"), including, without limitation, the Accounts Receivable through the Closing Date (as defined below) set forth on Schedule 1(a)(vii); and

(viii)  all other tangible assets of the Sellers relating to the Sellers' Business which do not constitute Excluded Assets, as defined below.

b.    *Excluded Assets.*  The Sellers will retain and not transfer, and Buyer will not purchase or acquire, the following assets (collectively, the "Excluded Assets"):

(i)     the assets being purchased pursuant to that certain Asset Purchase Agreement dated as of the date hereof between the Sellers, as sellers, and Dental Wizard Holding, Inc., as buyer; and

(ii)    all cash held by Sellers on the closing date.

c.    *Assignment of Contracts; Excluded Liabilities.* Sellers, at their sole cost and expense, shall obtain any and all consents and approvals necessary or appropriate to assign the Assumed Contracts to Buyer. Notwithstanding anything to the contrary in this Agreement, the Buyer shall not assume any liabilities, obligations or commitments of any Seller relating to or arising out of the Sellers Business and Sale Assets whatsoever, except any duties or obligations arising under the Assumed Contracts after the Closing (the "Excluded Liabilities").

2.    **PURCHASE PRICE; STRUCTURE; PAYMENT.**

a.    *Purchase Price Amount.* The purchase price to be paid by Buyer to Sellers for the sale as referenced hereinabove shall be $458,330.00, subject to the PP Adjustment

2

Amount ("Purchase Price"). At the Closing, the Buyer shall pay to Sellers the Purchase Price portion of $458,330.00, but subject to adjustment in accordance with Section 2(b) below.

      b.    *Purchase Price Adjustment.*

      *1)*    Notwithstanding anything in this Agreement to the contrary, the Purchase Price shall be adjusted as follows (collectively, "PP Adjustment Amount"): (A) the Purchase Price shall be increased by the amount (if any) equal to 70% (e.g. $0.70 for every $1.00) of the Accounts Receivable actually collected and received by the Buyer within the 90-day period following the Closing ("Transition Period") above $54,758.00 ("Positive PP Adjustment"); and (B) the Purchase Price shall be decreased by the amount (if any) equal to 100% (e.g. $1.00 for every $1.00) of the Accounts Receivable actually collected and received by the Buyer within the Transition Period below $54,758.00 ("Negative PP Adjustment"). For example, if Buyer only collects only $44,758.00 in Accounts Receivable within the Transition Period, then the Purchase Price shall be decreased by the $10,000.00 Negative PP Adjustment.

      *2)*    Within 15 days of the conclusion of the Transition Period, Buyer shall notify the Sellers of the PP Adjustment Amount, and within 10 days of such notice, either (A) Seller shall pay to Buyer the amount of any Negative PP Adjustment, or (B) Buyer shall pay to Seller any Positive PP Adjustment. Sellers' Shareholder shall personally guarantee and be liable for the prompt payment of the Negative PP Adjustment to the Buyer under this Section 2(b).

      *3)*    For avoidance of doubt, Sellers shall be solely responsible for and assume all risk associated with the collection of the Accounts Receivable for the benefit of the Buyer hereunder, and the Sellers and Sellers' Shareholder shall not assert any defense to the payment of the Negative PP Adjustment to the Buyer as a result of any actions and/or omissions on the part of Buyer in connection with the billing, collection or any other actions or omissions with respect to the Accounts Receivable.

      c.    *Allocation.* The Purchase Price shall be allocated in the manner set forth on <u>Schedule 2(c)</u>.

      d.    *Refund of Lease Deposits.* At Closing, the Buyer shall pay to Sellers the aggregate sum of $10,500.00 as reimbursement for the Lease Deposits being transferred to Buyer under this Agreement.

    3.    **CLOSING.**

      a.    The closing of the transaction contemplated by this Agreement ("Closing") shall take place on or before 8:00 p.m. on January 11, 2018 ("Closing Date"), at the office of Buyer's legal counsel, Tinovsky Law Firm, 5 Neshaminy Interplex, Suite 205, Trevose, PA 19053 ("Buyer's Counsel"), or such other time and place as the parties may mutually agree in writing.

      b.    At the Closing, the Sellers shall deliver to Buyer:

*1)*      A Bill of Sale and Assignment for the Sale Assets, in form and substance acceptable to Buyer;

*2)*      Such other deliveries required by this Agreement from the Sellers, if any.

c.      At the Closing, the Buyer shall deliver to Sellers:

*1)*      The Purchase Price;

*2)*      Such other deliveries required by this Agreement from the Buyer, if any.

**4.      SELLERS' REPRESENTATIONS AND WARRANTIES**

Sellers and Sellers' Shareholder represent and warrant to Buyer as follows:

a.      *Power and Authorization.* Each of the Sellers is a professional corporation duly organized, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania with full power and authority to carry on their respective businesses now being conducted, to own or hold under lease the properties and assets to which they own or hold under lease and to perform all of their obligations under the agreements and instruments to which each of them is a party or by which each of them is bound. Sellers have the power and authority to enter into and perform their obligations under this Agreement. The execution, delivery and performance by Sellers of this Agreement have been duly authorized by all necessary action. This Agreement has been duly and validly executed and delivered by Sellers and constitutes the legal, valid and binding obligation of Sellers enforceable against any and all of them in accordance with its terms.

b.      *Brokers.*   Sellers shall be solely responsible for any and all brokerage and/or finders' fees or agents' commissions or other like payment (collectively, the "Broker Fees") in connection with this Agreement or any transaction contemplated under this Agreement (including, without limitation, any such owed to Dennis Patel or his employers/affiliates), and Sellers and Sellers' Shareholder shall indemnify and hold Buyer harmless from any and all Damages relating to such Broker Fees, Seller's failure to pay such Broker Fees, or all actions and/or proceedings relating to such Broker Fees or collection thereof.

c.      *No Violation.* Neither (i) the execution and delivery of this Agreement, (ii) compliance by Sellers with any of the provisions hereof, nor (iii) the consummation of the transactions contemplated hereby will:

*1)*      violate or, with or without the giving of notice or the passage of time or both, result in the breach or termination of, or otherwise give any other contracting party the right to terminate, or declare a default under, the terms of any agreement to which Sellers are a party; or

4

2)       violate any law or regulation relating to the Seller, Sellers Business or Sale Assets.

d.     *Licenses and Permits and Litigation.*  Sellers and Sellers' Shareholder had and have all permits, licenses, orders and approvals of all federal, state, local or foreign governmental or regulatory bodies required for them to carry on the Sellers' Business (including, without limitation, the practice of dentistry at the Office Locations) in all respects as presently conducted, and no written suspension or cancellation notice with respect thereto has been given to Sellers and/or Sellers' Shareholder.  Sellers and Sellers' Shareholder are aware of no pending actions, suits or proceedings (arbitration or otherwise) to which any of them are a party.

e.     *No Adverse Changes, Operations and Liabilities.*  There has not been any adverse change in the financial condition or Sale Assets of Sellers, and Sellers have operated the Sellers' Business in the ordinary course substantially consistent with past practice and have not incurred, to their knowledge, any obligation or liability, except in the ordinary course of their business.  Sellers, to their knowledge, have no liability or obligation, absolute or contingent, which they have not disclosed to Buyer.  Sellers have owned and operated the Sellers' Business and Sale Assets in compliance with all applicable laws, rules, regulations and ordinances prior to the Closing, and Sellers have not violated, and have not infringed upon, any rights of third parties (including, without limitation, rights relating to intellectual property, privacy, publicity, contract, or otherwise) with respect to the ownership and/or operation of the Sellers' Business and/or Sale Assets prior to the Closing. Sellers' Shareholder has owned and operated the Sellers in compliance with all applicable laws, rules, regulations and ordinances prior to the Closing, and Sellers' Shareholder has not violated, and has not infringed upon, any rights of third parties (including, without limitation, rights relating to intellectual property, privacy, publicity, contract, or otherwise) with respect to the ownership and/or operation of the Sellers prior to the Closing.

f.     *Title and Condition of Assets.*  Sellers have good and marketable title, with no known infringement or violation of the rights of others, to each of the Sale Assets free and clear of all liens, claims and encumbrances, and have the right to assign or convey all Sale Assets to Buyer pursuant to this Agreement. Except for normal breakdowns and servicing requirements, all equipment is in satisfactory operating condition, ordinary wear and tear excepted.

g.     *Contracts.*  Sellers have made available to Buyer for inspection all Assumed Contracts.  All Assumed Contracts are in full force and effect and enforceable against Sellers in accordance with their respective terms, and Sellers are not in default under any of the Assumed Contracts and no notice of default or violation has been sent, received or threatened in connection with the Assumed Contracts. Sellers have obtained any and all consents and approvals necessary or appropriate to assign the Assumed Contracts to Buyer free and clear of all Excluded Liabilities. Sellers are transferring all right, title and interest in and to the Lease Deposits to the Buyer under this Agreement, and as of the date of the Closing the Lease Deposits total $10,500.00 and are not subject to any claims by the respective landlords for damages, offsets, reduction or any deductions whatsoever by the landlords to the Office Leases or otherwise.

      h.    *Accounts Receivable*. The Accounts Receivable as of the Closing total not less than $54,758.00. All Accounts Receivable relate to bona fide goods actually delivered or services actually provided, have arisen in the ordinary course of business, are not subject to any counterclaims or offsets, and have been billed and are generally due within thirty (30) days after such billing. All Accounts Receivable are fully collectable in the normal and ordinary course of business. There are no refunds, reimbursements, discounts, or other adjustments payable by Sellers or which impact the Accounts Receivable, and there are no deposits held by Sellers that may in the future become due to Sellers' customers, suppliers or vendors or any governmental body, insurer or third-party payer which relate in any way to the Accounts Receivable. There are no defenses, rights of set off, assignments, pledges, liens, equities, or conditions enforceable by third parties with respect to the Accounts Receivable.

      i.    *Books and Records*.   The Sellers have delivered to the Buyer true, correct and complete copies of the Certificate of Incorporation and Bylaws of the Sellers as in effect on the date hereof, including all amendments thereto, and the minute books and stock books of the Sellers. The Sellers have delivered to the Buyer true, correct and complete copies of all the medical/dental records of the Sellers' Business on the date hereof, including, without limitation, all patient charts and billing and collection records relating to the Accounts Receivable and the Sellers' Business.  The medical/dentistry records, books of account, minute books and record books evidencing the Sellers' Business constitute part of the Sale Assets, and all such books and records have been maintained in the ordinary course of business in accordance with sound business practices and all signatures included therein are the genuine signatures of the persons whose signatures are required. The minute books of the Sellers contain records that are accurate and complete in all respects of all meetings held of, and corporate action taken by, the stockholders, the board of directors, and committees of the board of directors of the Company. At the Closing, all of those books and records of the Sellers' Business shall be part of the Sale Assets and shall be delivered to the Buyer.

      j.    *Financial Statements*.  The Sellers have heretofore delivered to Buyer the financial statements and tax returns relating to the Sellers for the fiscal years ending December 31, 2015, 2016 and 2017 (collectively, the "Financial Records"). The Financial Records are true and correct in all respects and fairly and accurately present the Sellers' revenues, expenses, assets, liabilities, financial position and other information set forth therein. The Financial Records have been prepared in conformity with all applicable laws, rules and regulations and in accordance with best accounting practices relating to Sellers' Business. Neither the Sellers nor the Sellers' Shareholder has any liabilities or obligations of any nature (whether known or unknown, asserted or unasserted, absolute or contingent, or accrued or unaccrued), and all such liabilities and obligations including those owed to taxing authorities have been paid for in full through the Closing Date.

      k.    *FFE and Inventory*.  All furniture, fixtures, equipment, inventory and other tangible assets that constitute part of the Sale Assets (i) was or shall be acquired and maintained in accordance with the regular business practices of the Sellers, (ii) consists or shall consist of new and unused items of a quality and quantity useable, saleable and merchantable in the ordinary course of business, (iii) are current and not discontinued or obsolete, and (iv) shall

be transferred to the Buyer at the Closing free and clear of all liens, claims, interests and encumbrances of any and all nature.

l. *Trade Names, Trademarks and Service Marks*. The corporate and trade names of Sellers that constitute part of the Sale Assets are the only names, trademarks, service marks and copyrights which are used by the Sellers in the operation of the Sellers' Business. Sellers are the sole and exclusive owners of such respective trade names, trademarks, service marks and copyrights which constitute part of the Sale Assets hereunder, and each Seller has the sole and exclusive right to use its trade names, trademarks, service marks and copyrights and assign all of its right, title and interest in such trade names, trademarks, service marks and copyrights to the Buyer hereunder. No claim has been threatened or asserted against any Seller that its respective corporate name or any of its trade names, trademarks, service marks or copyrights which constitute part of the Sale Assets conflict with the trade names, trademarks, service marks, copyrights, corporate names or other proprietary rights of others, and the Sellers have no knowledge of any basis for any such claim or conflict.

m. *Judgments, Decrees and Orders in Restraint of Business*. Neither the Sellers nor any of the assets owned or used by Sellers are a party to or subject to any order entered in any proceeding brought by a governmental body or, by any other person enjoining or restricting the Sellers in respect of (a) any business practice, (b) the acquisition of any property or (c) the conduct of business in any area. The Sellers are not subject to any order entered in any proceeding brought by a governmental body or by any other person that relates to the Sale Assets or to the business of or any of the assets owned or used by the Sellers.

n. *No Material Adverse Change*. In the past 24 months, there has not been any material adverse change in the operations, properties, assets, financial condition or business prospects of Sellers or any event, condition or contingency that is reasonably likely to result in such a material adverse change, in either case, which has specific application to Sellers or the Sellers' Business.

o. *Employees; Contractors*. Schedule 4(o) hereto contains a current list setting forth the following information for each current employee and independent contractor of Sellers, including, without limitation, the name, job title and status. Except as disclosed in Schedule 4(o) hereto, no current employee or independent contractor of Sellers is a party to, or is otherwise bound by, any agreement or arrangement, including, without limitation, any confidentiality, non-competition or proprietary rights agreement (collectively "Proprietary Rights Agreement") between such employee or independent contractor and any person which in any way affects or is likely to affect (i) the performance of his duties as an employee or independent contractor of Sellers or (ii) Buyer's ability to conduct the Sellers' Business. Sellers have paid to all of their employees and independent contractors all salary, bonuses, severance pay, vacation benefits, medical benefits and all other compensation and benefits which have or will accrue as of the Closing Date. There is no dispute between any Seller and any of its current and former employees or independent contractors related to any discrimination, harassment, compensation or benefits, including, without limitation, to salary, bonuses, severance pay, vacation benefits, pension benefits, age discrimination or sexual harassment. Upon request of Buyer, the Sellers, Sellers' Shareholder and Sellers' Managers shall terminate the employment or engagement of

7

any or all of their employees and contractors, and cause such to employees or contractors requested by Buyer to become employed or engaged with Buyer immediately following the Closing, on the same terms and conditions as such were previously employed or engaged with Sellers, Sellers' Shareholder or Sellers' Managers immediately prior to the Closing.

        p.    *Certain Payments*. Neither the Sellers nor Sellers' Shareholder has, directly or indirectly made any unlawful contribution, gift, bribe, rebate, payoff, influence payment, kickback or other payment to any person, private or public, regardless of form whether in money, property or services (i) to obtain favorable treatment in securing business, (ii) to pay for business secured, (iii) to obtain special concessions or for special concessions already obtained for or in respect of Sellers, or (iv) which constitute prohibited remuneration or compensation under applicable laws, rules and regulations. Sellers and Sellers' Shareholder have complied in all respects with all applicable federal, state, and local laws, rules, regulations, and restrictions in the conduct of the dentistry services, including without limitation, the federal anti-kickback statute, the federal false claims act, the Stark self-referral statute, or the false claims act of any state.

        q.    *Taxes*. For all fiscal periods in respect of which a governmental body may assess any tax, Sellers have filed all tax returns, reports, and estimates for all years and periods (and portions thereof) for which any such returns, reports and estimates were due and all such returns, reports and estimates were true, correct and complete in all material respects and were prepared in the manner required by applicable law, including, without limitation, the tax returns of Sellers which constitute part of the Financial Documents.  All taxes required to be paid on or prior to the Closing Date by Sellers, including taxes withheld by Sellers, have been paid or provided for in full. Sellers are not a party to any action or proceeding by any governmental body for assessment or collection of taxes, nor has any claim for assessment or collection of taxes been asserted or threatened against Sellers. Sellers have not been audited by any governmental body having taxing authority.

        r.    *Insurance*. Schedule 4(r) hereto sets forth all insurance policies and bonds of Sellers in force at the date hereof and any liability insurance policies which were in force at any time within the last two (2) years.

        s.    *Disclosure; Conduct Of Business*.

        *1)*    No representation or warranty of Sellers and Sellers' Shareholder contained in this Agreement or statement in the Schedules or Exhibits hereto (i) which is qualified by materiality contains any untrue statement and (ii) which is not qualified by materiality contains any materially untrue statement. No representation or warranty of Sellers or Sellers' Shareholder contained in this Agreement or statement in the Schedules or Exhibits hereto omits to state a material fact necessary in order to make the statements herein or therein, in light of the circumstances under which they were made, not misleading.

        *2)*    No notice given by Sellers or Sellers' Shareholder pursuant to this Agreement will contain any untrue statement of a fact or will omit to state a fact necessary in

8

order to make the statements therein, in light of the circumstances under which they were made, not materially misleading.

        *3)*      There is no fact known to Sellers or Sellers' Shareholder which has specific application to Sellers and which adversely affects the Sellers' Business or any of the Sale Assets which has not been set forth in this Agreement or the Schedules hereto.

        *4)*      Sellers and Sellers' Shareholder have no knowledge of any intention by any patient/client to: (i) discontinue its relationship with Sellers' Business prior to or after the Closing; (ii) not to become a patient/customer of Buyer after the Closing; or (iii) decrease its level of business with Buyer after the Closing from the historic level of business conducted with Sellers prior to the Closing.

        t.      *Environmental Matters.* There are no violations or alleged violations under environmental laws applicable to Sellers or to the ownership or operation of the Sale Assets or the operation of the Sellers' Business. Sellers have maintained the Sale Assets and conducted Sellers' Business in compliance with the terms and conditions of all consents, licenses, permits, approvals, and certificates issued to the Sellers by any governmental body and required under any environmental law. Sellers have not generated, manufactured, refined, transported, handled, disposed, produced, used or processed any hazardous materials except in full compliance with all applicable laws.

        u.      *No Undisclosed Liabilities.* Sellers have no liabilities or obligations of any nature (absolute, accrued, contingent or otherwise) that were not fully and expressly paid or provided for by the Sellers prior to the Closing.

## 5.      POST CLOSING COVENANTS AND AGREEMENTS

        a.      *Sellers' Post-Closing Services.*  During the Transition Period, Sellers, Sellers' Shareholder and Sellers' Managers shall render to, for or on behalf of Buyer, without any additional compensation or consideration payable from Buyer, the following services (collectively, the "Transition Services"): (i) providing management, support and billing services relating to the Sale Assets, the Sellers' Business being transitioned to the Buyer hereunder, and collecting the Accounts Receivable and post-Closing accounts receivable for dentistry services or goods provided at the Office Locations during the Transition Period, (ii) assisting the Buyer to render dentistry services and/or goods by or on behalf of Buyer at the Office Locations, and bill and collect for such services and/or goods, and (iii) collect the Accounts Receivable and post-Closing accounts receivable relating to the foregoing dentistry services and/or goods. Sellers shall change the signatory authority on the bank and financial institution accounts of the Sellers to one or more designees of the Buyer for purposes of collecting the Accounts Receivable and post-Closing accounts receivable hereunder. Sellers covenant and agree not to take any action and/or omission in order to jeopardize their performance under this Section, including, without limitation, inactivating, terminating and/or permitting to lapse any governmental provider numbers, billing contracts or authorizations, or licenses, permits and/or approvals necessary and/or appropriate for the rendering of dentistry services and billing and collecting therefore. Upon request of Buyer, the Sellers, Sellers' Shareholder and Sellers' Managers shall terminate

the employment or engagement of any or all of their employees and contractors, and cause such to employees or contractors requested by Buyer to become employed or engaged with Buyer immediately following the Closing, on the same terms and conditions as such were previously employed or engaged with Sellers, Sellers' Shareholder or Sellers' Managers immediately prior to the Closing.

        b.    *Transfer of Sale Assets.* Following the Closing, Sellers and Sellers' Shareholder agree fully to cooperate with Buyer in connection with any and all necessary or appropriate actions, including, without limitation, the preparation, execution, and delivery of any and all documents required by the Buyer to transition ownership of the Sale Assets to the Buyer.

        c.    *Name Change.*  Within three business days after the Closing, the Sellers shall change their name to remove any reference to the terms "Diamante Dental" and "Paradise Dental".

6.    **INDEMNIFICATION.**

        a.    Subject to the other provisions of this Section 6, Sellers and Sellers' Shareholder shall jointly and severally indemnify, defend and hold Buyer and its shareholders, directors, officers, employees, contractors, insurers, agents, attorneys, representatives, and affiliates (collectively, "Buyer Parties") harmless against and in respect of any and all losses, costs, expenses, claims, damages, obligations and liabilities, including interest, penalties and reasonable attorneys' fees and disbursements (collectively, "Damages"), which Buyer Parties may suffer, incur or become subject to, arising out of or relating to:

        *1)*    any inaccuracy in or any breach of a representation or warranty by Sellers, Sellers' Shareholder and/or Sellers' Managers contained in this Agreement; and

        *2)*    any breach or nonfulfillment of any material covenant, agreement, undertaking or obligation by any of Sellers, Sellers' Shareholder and/or Sellers' Managers contained in this Agreement; and

        *3)*    any and all liabilities of Sellers, Sellers' Shareholder, and/or Sellers' Managers, and/or Buyer Parties to any governmental agency, insurer or other payer for overpayments of amounts for services rendered or goods provided by Sellers or the Sellers' Business prior to the Closing; and

        *4)*    any and all acts, omissions, circumstances, conditions or state of affairs existing or occurring prior to the Closing, including, without limitation, any liability for dentistry services or duties of the Sellers, Sellers' Shareholder, Sellers' Managers and/or their staff, employees, agents or personnel prior to the Closing, including, without limitation, for any and all Excluded Liabilities; and

        *5)*    any and all acts, omissions, circumstances, conditions or state of affairs created in whole or in part by the Sellers, Sellers' Shareholder, Sellers' Managers and/or their staff, employees, agents or personnel.

b.      Subject to the other provisions of this Section 6, Buyer shall indemnify, defend and hold Sellers harmless against their actual Damages due to the acts and/or omissions of the Buyer in the operation of its dentistry business at the Office Locations after the Transition Period.

c.      The duties, obligations and covenants set forth in this Section 6 shall survive the Closing indefinitely.

7.      **NON-COMPETITION; NON-SOLICITATION.**

a.      For a period of five (5) years after the Closing Date ("Restricted Duration"), Sellers, Sellers' Shareholder and Sellers' Managers shall not, directly or indirectly:

*1)*      own, manage, organize, operate, finance, advise, be employed by, consult to or participate in or assist with the ownership, management, organization, operation or financing of or permit its or their names to be used by or in connection with any dentistry practice, dental business, and/or any and all other business and/or enterprise which is similar to and/or competitive with the Buyer Parties' dentistry practice and/or dental business and/or the business and/or activity of any person and/or entity owning, operating, leasing and/or using the Sale Assets (collectively, "Competitive Activities") within a five (5) mile radius of each Office Location and any other office and/or place of business of the Buyer Parties (collectively, the "Restricted Territory").

*2)*      induce, canvas, encourage and/or solicit, or participate in or assist with, the inducement, canvasing, encouragement and/or solicitation of, any actual or prospective client, customer, or patient of Buyer Parties to (A) patronize a dentistry practice and/or dental business other than that of the Buyer Parties, (B) seek or obtain dentistry and/or dental services and/or goods from any person or entity other than the Buyer Parties, or (C) reduce or eliminate the level of services and/or goods purchased or otherwise obtained from the Buyer Parties;

*3)*      persuade, stimulate, influence or hire, or attempt to persuade, stimulate, influence or hire, any employee or contractor of the Buyer Parties, or to encourage any such employee or contractor of the Buyer Parties to become employed, engaged or affiliated at any time with any other person or entity other than the Buyer Parties;

*4)*      engage or participate or support any actions which could adversely impact the business, success and/or reputation of the Buyer Parties.

b.      Each of Sellers, Sellers' Shareholder and Sellers' Managers acknowledges that the provisions of this Section are reasonable and necessary to protect the interests of Buyer, that any violation of this Section will result in an irreparable injury to Buyer and that damages at law would not be reasonable or adequate compensation to Buyer for violation of this Section and that, in addition to any other available remedies, Buyer shall be entitled to have the provisions of this Section specifically enforced by preliminary and permanent injunctive relief without the necessity of proving actual damages or posting a bond or other security and to an equitable

11

accounting of all earnings, profits and other benefits arising out of any violation of this Section. In the event that the provisions of this Section shall ever be deemed to exceed the time, geographic, product or other limitations permitted by applicable law, then the provisions shall be deemed reformed to the maximum extent permitted by applicable law.

      c.    Sellers, Sellers' Shareholder and Sellers' Managers shall be jointly and severally liable and responsible to Buyer (and its successors and assigns) for any breach or violation of this Section 7, including, without limitation, any and all Damages (including, without limitation, reasonable attorneys fees, court costs, expert fees, etc.) incurred in connection with any action or proceeding by the Buyer (and its successors and assigns) to enforce the terms of this Section 7 against the Sellers, Sellers' Shareholder, and Sellers' Managers.

## 8.    MISCELLANEOUS.

      a.    *Notices.* All notices, consents and other communications under this Agreement shall be in writing and shall be deemed to have been duly given when (a) delivered by hand, (b) sent by email (with receipt confirmed), provided that a copy is mailed by registered mail, return receipt requested, or (c) when received by the addressee, if sent by Express Mail, Federal Express or other express delivery service (receipt requested), or courier in each case to the appropriate addresses set forth below (or to such other addresses as a party may designate as to itself by notice to the other parties):

Sellers, or Sellers' Shareholder
or Sellers' Managers:

c/o Yefim Aranbayev, D.D.S.
*5530 New Falls Rd*
*Levittown, PA 19056*
Phone: 718-551-7658
Email:

With Copy to:

Leonard Zoftis, Esquire
Velter, Yurovsky & Zoftis, LLC
1111 Street Road, Suite 305
Southampton, PA 18966
Phone: (215) 969-3004
Email: lzoftis@vyzlaw.com

Buyer:

Dental Wizard, P.C.
1235 Bridgetown Pike
Feasterville-Trevose, PA 19053
Attn: President
Phone:
Email:

With Copy to:

Vlad Tinovsky, Esquire

Tinovsky Law Firm
5 Neshaminy Interplex, Suite 205
Trevose, PA 19053
Phone: (215) 568-6862
Email: vtinovsky@tinovsky.com

     b.    *Governing Law; Jurisdiction; Service of Process.* This Agreement and its interpretation shall be governed by the laws of the Commonwealth of Pennsylvania. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties only in the federal or state courts of competent jurisdiction in Bucks County, Pennsylvania, and each of the parties hereby consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

     c.    *Further Assurances.* The parties hereto agree (i) to furnish upon request to each other such further information, (ii) to execute and deliver to each other such other documents, and (iii) to do such other acts and things, all as the other party hereto may at any time reasonably request for the purpose of carrying out the intent of this Agreement and the documents referred to herein. Sellers will use their best efforts to obtain any consents required to transfer and assign to Buyer all contracts, authorizations and other rights of any nature whatsoever relating to or constituting part of the Sale Assets, it being understood that neither Sellers nor Buyer shall be obligated to make any third party payments in order to obtain consents.

     d.    *Waiver.* The rights and remedies of the parties to this Agreement are cumulative and not alternative. Neither the failure nor any delay on the part of any party in exercising any right, power or privilege under this Agreement or the documents referred to herein shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (i) no claim or right arising out of this Agreement or the documents referred to herein can be discharged by one party hereto, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other party hereto; (ii) no waiver which may be given by a party hereto shall be applicable except in the specific instance for which it is given; and (iii) no notice to or demand on one party hereto shall be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to herein.

     e.    *Entire Agreement; Modification* This Agreement supersedes all prior agreements among the parties with respect to its subject matter and is intended (with the documents referred to herein) as a complete and exclusive statement of the terms of the agreement among the parties with respect thereto. This Agreement may not be changed or terminated except by a written agreement executed by all of the signatories hereto.

     f.    *Assignments; Successors.* This Agreement may not be assigned by either party without the prior consent of the other party, except that Buyer can assign this agreement or

13

any rights hereunder to any of its affiliates. This Agreement shall apply to and be binding in all respects upon, and shall inure to the benefit of, the successors and permitted assigns of the parties hereto. Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person other than the parties to this Agreement any legal or equitable right, remedy or claim under or with respect to this Agreement, or any provision hereof, it being the intention of the parties hereto that this Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement, their successors and assigns, and for the benefit of no other person.

g.      *Section Headings, Construction.* The headings of Sections contained in this Agreement are provided for convenience only. They form no part of this Agreement and shall not affect its construction or interpretation. All references to Sections in this Agreement refer to the corresponding Sections of this Agreement. All words used herein shall be construed to be of such gender or number as the circumstances require. Unless otherwise specifically noted, the words "herein," "hereof," "hereby," "hereinabove," "hereinbelow," "hereunder," and words of similar import, refer to this Agreement as a whole and not to any particular Section, subsection, clause or other subdivision hereof.

h.      *Counterparts.* This Agreement may be executed in one or more counterparts (by PDF, facsimile or other electronic transmission), each of which shall be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.

i.      *Prevailing Party Fees.* In any action or proceeding to enforce this Agreement or any provisions hereof, the substantially prevailing party shall be entitled, in addition to its other remedies, to recover its reasonable attorney's and expert's fees, travel expenses, and court costs related to such action or proceeding.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, each of the parties hereto has caused this Asset Purchase Agreement to be duly executed on the date first written above.

**SELLERS:**

Diamante Dental, Inc.

By:_____
Name: Yefim Aranbayev, D.D.S.
Title:   President

Paradise Dental Inc.

By:_____
Name: Yefim Aranbayev, D.D.S.
Title:   President

**SELLERS' SHAREHOLDER:**

_____
Yefim Aranbayev, D.D.S.

**BUYER:**

Dental Wizard, P.C.

By: _____
Name:  Oleg Genis, D.M.D.
Title:   President

**ACKNOWLEDGEMENT AND AGREEMENT TO BE LEGALLY BOUND FOR PURPOSES OF, *INTER ALIA*, SECTION 7 HEREOF:**

**SELLERS' MANAGERS:**

Dental Empire, Inc.

By:_____
Name: Artur Martirosyan
Title:   President

_____
Artur Martirosyan, Individually

15

## SCHEDULES

### Schedule 1(a)(i) - List of Certain Sale Assets

See Attached

### Schedule 1(a)(vi) - Assumed Contracts

1.      Office Lease for 100 E. Allegheny Avenue, Philadelphia PA
2.      Office Lease for 2338 N. front Street, Philadelphia, PA

### Schedule 1(a)(vii) – Accounts Receivable

See Attached

### Schedule 2(c) - Purchase Price Allocation

| *Description* | *Amount* |
|---|---|
| Tangible Assets | $20,000.00 |
| Intangible Assets | $200,000.00 |
| Goodwill | $100,000.00 |
| Restrictive Covenants | $100,000.00 |
| Accounts Receivable (70% Value) | $38,330.00 |
| TOTAL: | $458,330.00 |

### Schedule 4(o) – List of Employees and Contractors

See Attached

### Schedule 4(r) – List of Insurance Policies and Bonds

See Attached

*[Remainder of Page Left Blank]*

Schedule 1(a)(i)

## List of Assets pursuant to Schedule 1(a)(i)

1. All goodwill, enterprise value and other intangible assets related to the Sellers' Business that do not constitute Excluded Assets.

Schedule 1(a)(vii)

Diamante Dental Inc.
Accounts Receivable

| | | billed amount | waiting for payment |
|---|---|---|---|
| AVESIS | N | $ 385.00 | $ 158.00 |
| AVESIS | N | $ 265.00 | $ 64.00 |
| AVESIS | N | $ 265.00 | $ 60.00 |
| AVESIS | N | $ 185.00 | $ 71.00 |
| AVESIS | N | $ 475.00 | $ 184.00 |
| DBP | N | $ 250.00 | $ 71.00 |
| AVESIS | N | $ 690.00 | $ 213.00 |
| AVESIS | N | $ 1,200.00 | $ 353.00 |
| KM | N | $ 295.00 | $ 73.80 |
| DBP | N | $ 540.00 | $ 159.00 |
| DPW | N | $ 350.00 | $ 89.15 |
| AETNA PP | N | $ 745.00 | $ 350.00 |
| AVESIS | N | $ 295.00 | $ 84.00 |
| DPW | N | $ 1,060.00 | $ 452.20 |
| AVESIS | N | $ 500.00 | $ 350.00 |
| DPW | N | $ 400.00 | $ 116.20 |
| KM | N | $ 490.00 | $ 114.30 |
| DPW | N | $ 250.00 | $ 55.70 |
| DPW | N | $ 190.00 | $ 86.60 |
| METLIFE | N | $ 330.00 | $ 130.80 |
| KM | N | $ 150.00 | $ 40.50 |
| KM | N | $ 295.00 | $ 73.80 |
| DPW | N | $ 200.00 | $ 52.15 |
| AVESIS | N | $ 500.00 | $ 350.00 |
| DPW | N | $ 295.00 | $ 77.60 |
| AVESIS | N | $ 345.00 | $ 85.00 |
| DBP | N | $ 840.00 | $ 316.00 |
| KM | N | $ 220.00 | $ 47.70 |
| AVESIS | N | $ 295.00 | $ 84.00 |
| AVESIS | N | $ 150.00 | $ 60.00 |
| KM | N | $ 165.00 | $ 61.20 |
| KM | N | $ 260.00 | $ 67.50 |
| AETNA PP | N | $ 1,500.00 | $ 500.00 |
| KM | N | $ 1,445.00 | $ 1,030.00 |
| DBP | N | $ 150.00 | $ 51.00 |
| DBP | N | $ 370.00 | $ 277.00 |
| KM | N | $ 750.00 | $ 378.00 |
| DPW | N | $ 525.00 | $ 244.88 |
| AVESIS | N | $ 450.00 | $ 194.00 |
| DPW | N | $ 595.00 | $ 175.80 |
| KM | N | $ 195.00 | $ 43.20 |
| AVESIS | N | $ 595.00 | $ 521.00 |
| KM | N | $ 420.00 | $ 98.10 |
| AVESIS | N | $ 150.00 | $ 37.00 |
| AVESIS | N | $ 600.00 | $ 370.00 |
| AVESIS | N | $ 520.00 | $ 171.50 |

| | | | | |
|---|---|---|---|---|
| KM | N | $ 405.00 | $ | 146.70 |
| DPW | N | $ 150.00 | $ | 61.20 |
| KM | N | $ 150.00 | $ | 33.30 |
| KM | N | $ 380.00 | $ | 93.60 |
| KM | N | $ 100.00 | $ | 30.60 |
| KM | N | $ 150.00 | $ | 40.50 |
| KM | N | $ 150.00 | $ | 40.50 |
| KM | N | $ 260.00 | $ | 67.50 |
| KM | N | $ 85.00 | $ | 40.50 |
| KM | N | $ 390.00 | $ | 90.90 |
| DPW | N | $ 815.00 | $ | 290.40 |
| KM | N | $ 865.00 | $ | 431.10 |
| AVESIS | N | $ 745.00 | $ | 405.00 |
| AVESIS | N | $ 180.00 | $ | 100.00 |
| KM | N | $ 445.00 | $ | 107.10 |
| AVESIS | N | $ 235.00 | $ | 118.00 |
| DPW | N | $ 150.00 | $ | 40.00 |
| AVESIS | N | $ 405.00 | $ | 180.00 |
| N | N | $ 175.00 | $ | 80.00 |
| KM | N | $ 630.00 | $ | 284.00 |
| KM | N | $ 240.00 | $ | 50.40 |
| KM | N | $ 180.00 | $ | 61.20 |
| KM | N | $ 295.00 | $ | 73.80 |
| KM | N | $ 150.00 | $ | 40.50 |
| DPW | N | $ 480.00 | $ | 75.20 |
| DPW | N | $ 420.00 | $ | 200.65 |
| AVESIS | N | $ 145.00 | $ | 28.00 |
| KM | N | $ 380.00 | $ | 198.00 |
| KM | N | $ 615.00 | $ | 343.80 |
| KM | N | $ 1,500.00 | $ | 1,426.00 |
| DPW | N | $ 250.00 | $ | 55.70 |
| DBP | N | $ 190.00 | $ | 112.00 |
| DPW | N | $ 195.00 | $ | 68.55 |
| AVESIS | N | $ 200.00 | $ | 115.00 |
| KM | N | $ 635.00 | $ | 208.80 |
| KM | N | $ 100.00 | $ | 30.60 |
| AVESIS | N | $ 465.00 | $ | 174.00 |
| DBP | N | $ 1,666.00 | $ | 1,106.00 |
| DBP | N | $ 190.00 | $ | 112.00 |
| KM | N | $ 775.00 | $ | 194.00 |
| UCCI | N | $ 550.00 | $ | 528.00 |
| KM | N | $ 600.00 | $ | 470.00 |
| AVESIS | N | $ 410.00 | $ | 121.00 |
| AVESIS | N | $ 405.00 | $ | 243.00 |
| AVESIS | N | $ 230.00 | $ | 68.00 |
| AVESIS | N | $ 230.00 | $ | 68.00 |
| AVESIS | N | $ 230.00 | $ | 68.00 |

| | | | | |
|---|---|---|---|---|
| H | KM | N | $ 665.00 | $ 342.00 |
| | AVESIS | N | $ 345.00 | $ 85.00 |
| | AVESIS | N | $ 475.00 | $ 152.00 |
| LO | DBP | N | $ 1,110.00 | $ 588.00 |
| QU | DPW | N | $ 240.00 | $ 51.70 |
| EN | AVESIS | N | $ 670.00 | $ 431.00 |
| | AVESIS | N | $ 435.00 | $ 101.00 |
| | KM | N | $ 445.00 | $ 107.10 |
| OS | AVESIS | N | $ 490.00 | $ 129.00 |
| | KM | N | $ 1,950.00 | $ 1,077.00 |
| DO | AVESIS | N | $ 150.00 | $ 60.00 |
| LIN | AVESIS | N | $ 195.00 | $ 68.00 |
| | DBP | N | $ 250.00 | $ 57.00 |
| A | DBP | N | $ 120.00 | $ 63.00 |
| R | DELTA | N | $ 295.00 | $ 136.00 |
| | AVESIS | N | $ 895.00 | $ 422.20 |
| | AVESIS | N | $ 235.00 | $ 235.00 |
| | DPW | N | $ 1,125.00 | $ 574.20 |
| R | DELTA | N | $ 1,267.00 | $ 814.60 |
| A | KM | N | $ 660.00 | $ 222.30 |
| S | DBP | N | $ 880.00 | $ 423.00 |
| | KM | N | $ 240.00 | $ 50.40 |
| M | KM | N | $ 770.00 | $ 317.70 |
| | AVESIS | N | $ 445.00 | $ 121.00 |
| | AVESIS | N | $ 345.00 | $ 85.00 |
| L | DBP | N | $ 480.00 | $ 199.00 |
| | DELTA | N | $ 415.00 | $ 120.00 |
| | AVESIS | N | $ 410.00 | $ 121.00 |
| | KM | N | $ 295.00 | $ 73.80 |
| S | AVESIS | N | $ 150.00 | $ 60.00 |
| | KM | N | $ 180.00 | $ 61.20 |
| | AVESIS | N | $ 350.00 | $ 98.50 |
| | AVESIS | N | $ 455.00 | $ 97.00 |
| | AVESIS | N | $ 665.00 | $ 426.00 |
| | AVESIS | N | $ 825.00 | $ 341.00 |
| | DPW | N | $ 920.00 | $ 457.05 |
| N | AVESIS | N | $ 450.00 | $ 221.00 |
| A | AVESIS | N | $ 230.00 | $ 68.00 |
| | AVESIS | N | $ 285.00 | $ 109.00 |
| | UCCI | N | $ 380.00 | $ 113.40 |
| | DBP | N | $ 938.00 | $ 577.00 |
| | DPW | N | $ 535.00 | $ 259.65 |
| | AVESIS | N | $ 340.00 | $ 92.00 |
| | KM | N | $ 345.00 | $ 96.50 |
| | FIDELIO | N | $ 295.00 | $ 70.00 |
| | KM | N | $ 450.00 | $ 216.00 |
| V | CIGNA PPO | N | $ 690.00 | $ 615.00 |

| | AVESIS | N | $ | 340.00 | $ | 102.00 |
|---|---|---|---|---|---|---|
| | AVESIS | N | $ | 295.00 | $ | 84.00 |
| | KM | N | $ | 295.00 | $ | 73.80 |
| | AVESIS | N | $ | 600.00 | $ | 370.00 |
| | AVESIS | N | $ | 390.00 | $ | 93.00 |
| | KM | N | $ | 100.00 | $ | 30.60 |
| | AVESIS | N | $ | 380.00 | $ | 220.00 |
| | AVESIS | N | $ | 175.00 | $ | 40.00 |
| | AVESIS | N | $ | 195.00 | $ | 68.00 |
| | DPW | N | $ | 295.00 | $ | 77.60 |
| | KM | N | $ | 740.00 | $ | 260.10 |
| | DELTA | N | $ | 675.00 | $ | 238.60 |
| | AVESIS | N | $ | 705.00 | $ | 597.00 |
| | AVESIS | N | $ | 575.00 | $ | 207.00 |
| | KM | N | $ | 340.00 | $ | 81.00 |
| | AVESIS | N | $ | 360.00 | $ | 184.00 |
| | AVESIS | N | $ | 260.00 | $ | 84.00 |
| | AVESIS | N | $ | 1,005.00 | $ | 391.00 |
| | AVESIS | N | $ | 600.00 | $ | 550.00 |
| | AVESIS | N | $ | 390.00 | $ | 137.10 |
| | AVESIS | N | $ | 490.00 | $ | 129.00 |
| | DBP | N | $ | 295.00 | $ | 83.00 |
| | total | | $ | 74,011.00 | $ | 32,869.88 |

Paradise Dental Inc.
Accounts Receivable

| | | | | | |
|---|---|---|---|---|---|
| DPW | N | $ | 725.00 | $ | 272.30 |
| KM | N | $ | 700.00 | $ | 81.00 |
| DBP | N | $ | 845.00 | $ | 224.00 |
| DBP | N | $ | 650.00 | $ | 252.00 |
| KM | N | $ | 670.00 | $ | 195.20 |
| KM | N | $ | 445.00 | $ | 123.30 |
| DBP | N | $ | 320.00 | $ | 91.00 |
| KM | N | $ | 310.00 | $ | 103.50 |
| DBP | N | $ | 465.00 | $ | 108.00 |
| DENTAQUES | N | $ | 1,140.00 | $ | 407.50 |
| DPW | N | $ | 1,210.00 | $ | 523.95 |
| KM | N | $ | 200.00 | $ | 40.50 |
| KM | N | $ | 400.00 | $ | 81.00 |
| DENTAQUES | N | $ | 350.00 | $ | 159.80 |
| KM | N | $ | 245.00 | $ | 47.70 |
| DPW | N | $ | 150.00 | $ | 34.45 |
| KM | N | $ | 295.00 | $ | 62.10 |
| DBP | N | $ | 295.00 | $ | 76.00 |
| DPW | N | $ | 550.00 | $ | 126.20 |
| DBP | N | $ | 265.00 | $ | 71.00 |
| KM | N | $ | 495.00 | $ | 114.30 |
| KM | N | $ | 1,545.00 | $ | 454.50 |
| KM | N | $ | 1,115.00 | $ | 320.40 |
| KM | N | $ | 295.00 | $ | 73.80 |
| KM | N | $ | 150.00 | $ | 49.50 |
| KM | N | $ | 410.00 | $ | 90.90 |
| KM | N | $ | 1,495.00 | $ | 460.00 |
| DBP | N | $ | 1,100.00 | $ | 402.00 |
| KM | N | $ | 2,000.00 | $ | 940.00 |
| KM | N | $ | 1,195.00 | $ | 238.50 |
| DPW | N | $ | 295.00 | $ | 59.50 |
| AVESIS | N | $ | 295.00 | $ | 84.00 |
| DPW | N | $ | 495.00 | $ | 112.00 |
| AVESIS | N | $ | 440.00 | $ | 93.00 |
| DPW | N | $ | 555.00 | $ | 142.00 |
| DBP | N | $ | 500.00 | $ | 208.00 |
| DBP | N | $ | 270.00 | $ | 71.00 |
| DBP | N | $ | 1,100.00 | $ | 490.00 |
| AVESIS | N | $ | 1,005.00 | $ | 384.00 |
| AVESIS | N | $ | 345.00 | $ | 85.00 |
| DPW | N | $ | 550.00 | $ | 207.90 |
| AVESIS | N | $ | 595.00 | $ | 168.00 |
| AVESIS | N | $ | 515.00 | $ | 137.00 |
| KM | N | $ | 1,040.00 | $ | 298.80 |
| DBP | N | $ | 1,100.00 | $ | 401.00 |
| DPW | N | $ | 520.00 | $ | 138.80 |
| DENTAQUES | N | $ | 495.00 | $ | 119.00 |

| | | | |
|---|---|---|---|
| DBP | N | $ 760.00 | $ 193.00 |
| DENTAQUES | N | $ 150.00 | $ 77.00 |
| KM | N | $ 250.00 | $ 81.00 |
| DENTAQUES | N | $ 295.00 | $ 82.00 |
| DENTAQUES | N | $ 295.00 | $ 82.00 |
| DENTAQUES | N | $ 970.00 | $ 292.00 |
| DENTAQUES | N | $ 1,245.00 | $ 380.00 |
| DBP | N | $ 200.00 | $ 52.00 |
| DENTAQUES | N | $ 340.00 | $ 100.00 |
| AVESIS | N | $ 565.00 | $ 178.00 |
| DBP | N | $ 150.00 | $ 37.00 |
| BC BS | N | $ 716.00 | $ 629.55 |
| TEAMSTER H | N | $ 150.00 | $ 50.00 |
| DELTA | N | $ 295.00 | $ 98.00 |
| AVESIS | N | $ 340.00 | $ 92.00 |
| DELTA | N | $ 1,435.00 | $ 547.60 |
| DELTA | N | $ 315.00 | $ 122.00 |
| AVESIS | N | $ 520.00 | $ 144.00 |
| AVESIS | N | $ 195.00 | $ 63.00 |
| AVESIS | N | $ 285.00 | $ 84.00 |
| AVESIS | N | $ 150.00 | $ 20.00 |
| DELTA | N | $ 1,050.00 | $ 622.00 |
| AVESIS | N | $ 1,545.00 | $ 478.50 |
| AVESIS | N | $ 410.00 | $ 129.00 |
| AVESIS | N | $ 150.00 | $ 37.00 |
| AVESIS | N | $ 150.00 | $ 55.00 |
| AVESIS | N | $ 325.00 | $ 101.00 |
| DELTA | N | $ 270.00 | $ 113.00 |
| DELTA | N | $ 220.00 | $ 91.00 |
| BCBS /CASH | N | $ 350.00 | $ 91.00 |
| AVESIS | N | $ 345.00 | $ 84.00 |
| AVESIS | N | $ 1,200.00 | $ 377.00 |
| AVESIS | N | $ 1,590.00 | $ 516.00 |
| AVESIS | N | $ 345.00 | $ 84.00 |
| AVESIS | N | $ 820.00 | $ 286.00 |
| AVESIS | N | $ 295.00 | $ 84.00 |
| DELTA | N | $ 295.00 | $ 48.00 |
| DELTA | N | $ 345.00 | $ 120.00 |
| AVESIS | N | $ 310.00 | $ 80.00 |
| AETNA PPO | N | $ 1,075.00 | $ 758.00 |
| DPW | N | $ 250.00 | $ 53.15 |
| AVESIS | N | $ 250.00 | $ 57.00 |
| KM | N | $ 295.00 | $ 58.50 |
| AVESIS | N | $ 295.00 | $ 84.00 |
| AVESIS | N | $ 295.00 | $ 84.00 |
| KM | N | $ 345.00 | $ 73.80 |
| UCCI | N | $ 250.00 | $ 93.00 |

| | | | | | |
|---|---|---|---|---|---|
| KM | N | $ | 295.00 | $ | 73.80 |
| DENTAQUES | N | $ | 675.00 | $ | 245.00 |
| AMERTAS | N | $ | 445.00 | $ | 120.00 |
| GUARDIAN | N | $ | 900.00 | $ | 725.00 |
| AVESIS | N | $ | 345.00 | $ | 100.00 |
| KM | N | $ | 475.00 | $ | 111.60 |
| KM | N | $ | 745.00 | $ | 222.30 |
| AVESIS | N | $ | 295.00 | $ | 84.00 |
| KM | N | $ | 1,295.00 | $ | 359.10 |
| DELTA | N | $ | 395.00 | $ | 140.00 |
| KM | N | $ | 295.00 | $ | 73.80 |
| KM | N | $ | 495.00 | $ | 106.20 |
| AVESIS | N | $ | 230.00 | $ | 95.00 |
| AVESIS | N | $ | 230.00 | $ | 95.00 |
| AVESIS | N | $ | 280.00 | $ | 95.00 |
| PHYSICIANS | N | $ | 300.00 | $ | 217.00 |
| AVESIS | N | $ | 495.00 | $ | 121.00 |
| AVESIS | N | $ | 270.00 | $ | 72.00 |
| DELTA | N | $ | 645.00 | $ | 206.00 |
| AVESIS | N | $ | 1,070.00 | $ | 364.00 |
| AVESIS | N | $ | 295.00 | $ | 68.00 |
| AVESIS | N | $ | 720.00 | $ | 246.00 |
| KM | N | $ | 245.00 | $ | 55.80 |
| AVESIS | N | $ | 765.00 | $ | 284.00 |
| AVESIS | N | $ | 250.00 | $ | 40.00 |
| AVESIS | N | $ | 285.00 | $ | 84.00 |
| | total | $ | 65,571.00 | $ | 21,889.10 |

Schedule 4(o)

Paradise dental

Front desk ████████████ 13.5$/h            ████████████ 35$/h

Assistant ████████ 14$ per hour (w2)        billing, front desk, report

EFDA ██████████████ 200$ a day              management.

Marketer ████████ 8$/h

Doctors

Monday ██████ 800$ base (4000 $ a day) avg

Tuesday █████ 650$ base 3500$-4000$ avg

Wednesday closed

Thursday ███████ 800$ base

Friday ██████ 600$ base  3000$-3500$ avg

 Diamante dental

Front desk ████████████ 14$/h

Assistant ████████████ 14$/h

████████████████ 13$/h

EFDA ██████████ 300$/H

Doctors

Monday ██████ 800$ base 3500$-4000$

Tuesday ██████ 800$ base 4500$-6000$

Wednesday ██████ 800$ base

Thursday ████████ 1200$ base 4500$

Friday ██████ 800$ base

**EXHIBIT B**

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "Agreement"), dated as of January 11, 2018 ("Effective Date") by and among (1) Diamante Dental Inc., a Pennsylvania professional corporation ("DDI"), with a principal place of business at 100 E. Allegheny Avenue, Philadelphia, PA 19134, (2) Paradise Dental Inc., a Pennsylvania professional corporation (the "PDI"; and together with DDI, collectively "Sellers"), with a principal place of business at 2338 N. Front Street, Philadelphia, PA 19133, (3) Yefim Aranbayev, D.D.S., a Pennsylvania resident ("Sellers' Shareholder"), and (4) Dental Wizard Holding, Inc., a Pennsylvania corporation ("Buyer").

## RECITALS:

**WHEREAS**, the Sellers are professional corporations rendering dentistry services in their respective office locations in Philadelphia, Pennsylvania (collectively, "Sellers' Business"), and the Sellers' Shareholder is a licensed dentist in the Commonwealth of Pennsylvania and the owner of 100% of the issued and outstanding capital stock of the Sellers; and

**WHEREAS**, Buyer wishes to purchase all the Sale Assets (as defined below) relating to the Sellers' Business, and the Sellers wish to sell the Sale Assets to the Buyer, all under the terms and conditions set forth in this Agreement.

**NOW THEREFORE**, intending to be legally bound hereby, the parties hereto agree as follows:

1.     **SALE ASSETS.**

      a.    Sellers hereby sell, convey, assign, transfer and deliver to Buyer, and Buyer hereby acquires and purchases from Sellers, all right, title, and interest of Sellers in and to the assets (collectively, the "Sale Assets") described below:

        (i)    all machinery, office equipment, computer hardware, furniture, fixtures, office supplies, and other tangible personal property and assets owned by Sellers which relate to the Sellers' Business (the "FFE and Inventory"), including, without limitation, all of the assets listed on Schedule 1(a)(i) hereto; and

        (ii)    all other tangible assets of the Sellers relating to the Sellers' Business which do not constitute Excluded Assets (as defined below).

      b.    *Excluded Assets*. The Sellers will retain and not transfer, and Buyer will not purchase or acquire, the following assets (collectively, the "Excluded Assets"):

        (i)    the assets being purchased pursuant to that certain Asset Purchase Agreement dated as of the date hereof between the Sellers, as sellers, and Dental Wizard, P.C., as buyer; and

1

(ii)     all cash held by Sellers on the closing date.

c.     *Excluded Liabilities*. Notwithstanding anything to the contrary in this Agreement, the Buyer shall not assume any liabilities, obligations or commitments of Sellers whatsoever (the "Excluded Liabilities").

## 2.     PURCHASE PRICE; STRUCTURE; PAYMENT.

a.     *Amount*. The purchase price to be paid by Buyer to Sellers for the sale as referenced hereinabove shall be $220,000.00 ("Purchase Price").

b.     *Payment Terms*. The Purchase Price shall be paid on the Closing Date.

c.     *Allocation*. The Purchase Price shall be allocated in the manner set forth on <u>Schedule 2(c)</u>.

## 3.     CLOSING.

a.     The closing of the transaction contemplated by this Agreement ("Closing") shall take place on or before 8:00 p.m. on January 11, 2018, at the office of Buyer's legal counsel, Tinovsky Law Firm, 5 Neshaminy Interplex, Suite 205, Trevose, PA 19053 ("Buyer's Counsel"), or such other time and place as the parties may mutually agree in writing.

b.     At the Closing, the Sellers shall deliver to Buyer:

1)     A Bill of Sale and Assignment for the Sale Assets, in form and substance acceptable to Buyer;

2)     Such other deliveries required by this Agreement from the Sellers, if any.

c.     At the Closing, the Buyer shall deliver to Sellers:

1)     The Purchase Price;

2)     Such other deliveries required by this Agreement from the Buyer, if any.

## 4.     SELLERS' REPRESENTATIONS AND WARRANTIES

Sellers and Sellers' Shareholder represent and warrant to Buyer as follows:

a.     *Power and Authorization*. Each of the Sellers is a professional corporation duly organized, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania with full power and authority to carry on their respective businesses now being conducted, to own or hold under lease the properties and assets to which they own or hold under lease and to perform all of their obligations under the agreements and instruments to which each

2

of them is a party or by which each of them is bound. Sellers have the power and authority to enter into and perform their obligations under this Agreement.  The execution, delivery and performance by Sellers of this Agreement have been duly authorized by all necessary action. This Agreement has been duly and validly executed and delivered by Sellers and constitutes the legal, valid and binding obligation of Sellers enforceable against any and all of them in accordance with its terms.

        b.    *Brokers.*  Sellers shall be solely responsible for any and all brokerage and/or finders' fees or agents' commissions or other like payment (collectively, the "Broker Fees") in connection with this Agreement or any transaction contemplated under this Agreement (including, without limitation, any such owed to Dennis Patel or his employers/affiliates), and Sellers and Sellers' Shareholder shall indemnify and hold Buyer harmless from any and all Damages relating to such Broker Fees, Sellers' failure to pay such Broker Fees, or all actions and/or proceedings relating to such Broker Fees or collection thereof.

        c.    *No Violation.* Neither (i) the execution and delivery of this Agreement, (ii) compliance by Sellers with any of the provisions hereof, nor (iii) the consummation of the transactions contemplated hereby will:

        1)    violate or, with or without the giving of notice or the passage of time or both, result in the breach or termination of, or otherwise give any other contracting party the right to terminate, or declare a default under, the terms of any agreement to which Sellers are a party; or

        2)    violate any law or regulation relating to the Sellers, Sellers' Business or Sale Assets.

        d.    *Licenses and Permits and Litigation.*  Sellers and Sellers' Shareholder had and have all permits, licenses, orders and approvals of all federal, state, local or foreign governmental or regulatory bodies required for them to carry on the Sellers' Business (including, without limitation, the practice of dentistry at the Office Locations) in all respects as presently conducted, and no written suspension or cancellation notice with respect thereto has been given to Sellers and/or Sellers' Shareholder.  Sellers and Sellers' Shareholder are aware of no pending actions, suits or proceedings (arbitration or otherwise) to which it is a party.

        e.    *No Adverse Changes, Operations and Liabilities.*  There has not been any adverse change in the financial condition or Sale Assets of Sellers, and Sellers have operated the Sellers' Business in the ordinary course substantially consistent with past practice and have not incurred, to their knowledge, any obligation or liability, except in the ordinary course of their business. Sellers, to their knowledge, have no liability or obligation, absolute or contingent, which they have not disclosed to Buyer. Sellers have owned and operated the Sellers' Business and Sale Assets in compliance with all applicable laws, rules, regulations and ordinances prior to the Closing, and Sellers have not violated, and have not infringed upon, any rights of third parties (including, without limitation, rights relating to intellectual property, privacy, publicity, contract, or otherwise) with respect to the ownership and/or operation of the Sellers' Business and/or Sale Assets prior to the Closing. Sellers' Shareholder has owned and operated the Sellers

3