IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENTAL WIZARD G PC, et al.     :          CIVIL ACTION
                               :
        v.                     :
                               :
YEFIM ARANBAYEV, et al.        :          NO. 18-3002
                               :

MEMORANDUM

Bartle, J.                                    November 30, 2018

        Plaintiffs Dental Wizard G PC and Dental Wizard

Holding, Inc. bring this action against defendants Yefim

Aranbayev, Artur Martirosyan, Anna Chistyakova, Diamante Dental,

Inc., Paradise Dental, Inc., and Dental Empire, Inc.  Plaintiffs

allege violations under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C §§ 1961 et seq., and the Computer

Fraud and Abuse Act, 18 U.S.C. § 1030, in connection with the

operation and sale of two dental practices to plaintiffs.  They

also bring a number of state law breach of contract and tort

claims.  Before the court is the motion of defendants to dismiss

the first amended complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure for failure to state a claim

upon which relief can be granted.

I

        When deciding a motion to dismiss under Rule 12(b)(6),

the court must accept as true all factual allegations in the

complaint and draw all inferences in the light most favorable to

the plaintiff.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim must do more than raise a "mere possibility of misconduct."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

On a motion to dismiss for failure to state a claim, the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).  The court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)

(citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

II

For present purposes, we accept as true the allegations set forth in the amended complaint. Defendants entered into an agreement to sell to plaintiffs the assets of two dental practices, Diamante Dental, Inc. ("Diamante") and Paradise Dental, Inc. ("Paradise"). Defendant Yefim Aranbayev ("Aranbayev") was the head dentist and purported owner of these dental practices. Defendants Artur Martirosyan ("Martirosyan") and his wife Anna Chistyakova ("Chistyakova") provided to the practices financial funding and operational, management, billing, and other services. Aranbayev, Martirosyan, and Chistaykova allegedly also own and/or operate defendant Dental Empire, Inc. ("Dental Empire") and other dental practices that are not parties to this action.

Two separate purchase agreements governed the sale of the assets. The first asset purchase agreement ("PC Purchase Agreement") between Diamante, Paradise, Aranbayev, Martirosyan, Dental Empire, and Dental Wizard, P.C. ("Dental Wizard PC") involved the sale of intangible assets, including records,

charts, and accounts receivable, of Paradise and Diamante.[1]  The
second purchase agreement ("Holding Purchase Agreement") between
Diamante, Paradise, Aranbayev, Martirosyan, Dental Empire, and
Dental Wizard Holding, Inc. ("Dental Wizard Holding") concerned
the sale of hard assets, including but not limited to machinery,
office equipment, and computer hardware.

Plaintiffs allege that defendants have engaged in a
pattern of fraudulent activity in connection with their dental
businesses beginning in at least 2015.  Defendants purportedly
billed and collected money from insurers and third-party payors
for dental services that were medically unnecessary and for
services that were not rendered.  To conceal and perpetuate this
conduct, defendants created false treatment and billing records
sent via mail or electronic communication in interstate
commerce.  Defendants also allegedly falsified employment and
payroll records to underpay dentists, misclassified employees as
independent contractors, and otherwise created fraudulent tax
and financial documents.

By 2017, the dental businesses had been audited,
investigated, and disciplined by insurers and third-party payors
for these practices, resulting in a loss of profits and business

---

1.  Plaintiff Dental Wizard G PC is a successor in interest
through merger to Dental Wizard, P.C.  Throughout this
memorandum, we will refer to both as "Dental Wizard PC."

prospects.  Defendants then began to market the dental
businesses.  Plaintiffs entered into negotiations with
defendants to purchase the dental businesses in late 2017.  From
November 2017 through January 2018, plaintiffs inquired about
any problems with the dental businesses in the course of due
diligence and negotiations.  Defendants denied the existence of
any problems and did not allow plaintiffs to interview current
dentists and staff.  On January 11, 2018, plaintiffs executed
the purchase agreements and closed the transaction with
defendants.

    After closing, plaintiffs assert they did not receive
the benefit of their bargain.  In or around one week after
closing, Avesis, the largest insurer of claims submitted by
Diamante and Paradise, terminated its provider agreements with
the dentists hired from the defendant dental practices.  It did
so due to the pattern of unlawful conduct perpetrated by
defendants prior to closing.  As a result, plaintiffs have lost
significant profits and ultimately have closed one of the dental
practices.  Plaintiffs further allege that defendants unlawfully
accessed the computer systems of plaintiffs after closing to
destroy patient service, billing, and payment records of
Diamante and Paradise, in order to conceal their fraudulent
conduct.

III

In Count I, plaintiffs allege that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C §§ 1961 et seq., by defrauding plaintiffs, patients, and insurers and third-party providers and thereby committing mail fraud, wire fraud, Medicare/Medicaid fraud, insurer/third-party payor fraud, violations of the False Claims Act, racketeering, and bank fraud. Plaintiffs allege this conduct also caused them financial harm by fraudulently inducing plaintiffs to enter into the purchase agreements and by denying them business relations and revenues. Defendants argue, among other reasons, that this claim should be dismissed for lack of standing.

Standing is a constitutional requirement for all federal cases. For standing to exist, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). To give rise to a RICO claim, a plaintiff must allege not only a causal connection between the

defendants' action and the plaintiffs' injuries but also that any causal connection is proximate, that is, not too remote. Callahan v. A.E.V., Inc., 182 F.3d 237, 260-61 (3d Cir. 1999); Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 932 (3d Cir. 1999).

In Allegheny General Hospital v. Philip Morris, Inc., 228 F.3d 429, 443 (3d Cir. 2000), our Court of Appeals described the analysis for proximate cause under RICO as set forth by the Supreme Court in Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992). The three factors are:

> (1) the directness of the injury-"the more indirect the injury, 'the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to [defendant's wrongdoing], as distinct from other, independent, factors;'" (2) the difficulty of apportioning damages among potential plaintiffs-"allowing recovery by indirectly injured parties would require complicated rules for apportioning damages;" and, (3) the possibility of other plaintiffs vindicating the goals of RICO-"direct victims could generally be counted on to vindicate the policies underlying" RICO in a better manner than indirect victims.

Allegheny Gen. Hosp., 228 F.3d at 443 (quoting Steamfitters, 171 F.3d at 932).

Here, plaintiffs were not the targets of the pleaded mail fraud, wire fraud, Medicare/Medicaid fraud, insurer/third-party payor fraud, violations of the False Claims Act, racketeering, and bank fraud. Instead, the alleged RICO

-7-

predicate acts of defendants targeted patients, insurers, third-party payors, and dentists employed by defendants.

Plaintiffs maintain they suffered loss of business with insurers and patients as well as lost profits from a closed office location. These harms were not the direct result of defendants' fraudulent acts but rather were the subsequent harms that occurred after plaintiffs entered into agreements to purchase the defendant businesses which were less profitable than expected. Plaintiffs therefore are not the direct victims of the pleaded RICO scheme. It would be difficult to apportion any damages from this alleged RICO activity between plaintiffs and the patients, insurers, payors, and employees who suffered economic losses as a result of defendants' allegedly fraudulent actions. As the direct victims of the described schemes, the patients, insurers and third-party payors, and dentists are in a better position to vindicate the policies underlying RICO than plaintiffs.

Accordingly, we will dismiss plaintiffs' claim under RICO in Count I of the amended complaint.

IV

In Count II of the amended complaint, plaintiffs allege violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The CFAA imposes civil liability on anyone who knowingly "accesses a protected computer without

authorization" or "exceeds authorized access" of a protected
computer. 18 U.S.C. § 1030(a)(4). In order to state a claim
under the CFAA, plaintiffs must demonstrate that the defendants:
"(1) accessed a 'protected computer;' (2) without authorization
or exceeded authorized access; (3) knowingly and with an intent
to defraud; (4) obtained something of value; and (5) caused
damage or loss to the plaintiff in excess of $5,000 in a
one-year period." Teva Pharm. USA, Inc. v. Sandhu, 291 F. Supp.
3d 659, 668 (E.D. Pa. 2018).

In the amended complaint, plaintiffs have alleged that
defendants accessed plaintiffs' computers after the January 11,
2018 closing. During this access, defendants allegedly deleted
patient medical, billing, and other electronic records that had
been transferred to plaintiffs as part of the sale. Plaintiffs
state that they did not authorize defendants to access the
computers. Defendants allegedly did so utilizing software that
had been installed prior to the closing which allowed them,
unbeknownst to plaintiffs, to access remotely the computers.
Plaintiffs have also alleged that the records accessed were not
related to any post-closing services that defendants were
required to perform under Section 5 of the purchase agreements.

Under this set of facts, plaintiffs have sufficiently
alleged that defendants accessed the computers without
authorization or, in the alternative, that defendants exceeded

their authorization to use the computers.  Accordingly, the motion to dismiss plaintiffs' claim under the CFAA in Count II will be denied.

V

In Count III, plaintiffs assert a state law claim against defendants for fraud.  Specifically, plaintiffs assert that defendants made numerous misrepresentations and omissions regarding the operational and financial condition of their dental practices, their client base, and their relationships with insurers and other third-party payors.  Plaintiffs also assert that defendants misled them regarding whether the dental practices conducted business in a lawful manner and the existence of audits, investigations, or other proceedings against the practices by third-party payors.

Defendants maintain that plaintiffs' fraud claim is barred by the gist of the action doctrine.  Under that doctrine, a party is precluded from recasting breach of contract claims into tort claims.[2]  Bruno v. Erie Ins. Co., 106 A.3d 48, 64-69 (Pa. 2014); see also Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010) (quoting Erie Ins. Exch. v. Abbott Furnace Co., 972 A.2d 1232, 1238 (Pa. Super. 2009)).  As explained in Bruno, "the nature of the duty alleged to have been

---

2.  There is no dispute that Pennsylvania law applies to plaintiffs' fraud and other tort claims.

breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." 106 A.3d at 68. In conducting our analysis, we focus on the substance of the allegations comprising plaintiffs' claims and not the labels used. Id. The test we must follow was articulated in Bruno as follows:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Id. (internal citations omitted). Applying this test, the Pennsylvania Supreme Court determined that the gist of the action doctrine did not bar plaintiffs' claim for negligence against its insurer and a contractor because plaintiffs' claim arose not from breach of the contract but from a social duty unrelated to the contract. Id. at 70-71.

In Williams v. Hilton Group PLC, a case predating Bruno, our Court of Appeals affirmed the dismissal of fraudulent inducement claims based on the gist of the action doctrine. 93 F. App'x 384, 387 (3d Cir. 2004). The Court reasoned that

the fraudulent inducement claim concerned specific duties outlined in the agreement between the parties, who were both sophisticated and thus well able to protect their rights by contract.  Id.  Since Bruno, several courts within this district have continued to dismiss fraudulent inducement claims based on the gist of the action doctrine where the alleged misrepresentations or omissions related to provisions of the contract.  See Malone v. Weiss, No. 17-1694, 2018 WL 827433, at *3-5 (E.D. Pa. Feb. 12, 2018); Atl. Holdings, Ltd. v. Apollo Metals, Ltd., 263 F. Supp. 3d 526, 531-32 (E.D. Pa. 2017); Wen v. Willis, 117 F. Supp. 3d 673, 681-83 (E.D. Pa. 2015).

Here, the alleged misrepresentations that give rise to plaintiffs' fraud claim are all subsumed by the contracts at issue.  Under Section 4 of the PC Purchase Agreement, defendants Aranbayev, Diamante, and Paradise represented and warranted that the financial statements and tax returns of Diamante and Paradise for the fiscal years 2015, 2016, and 2017 were "true and correct in all respects and fairly and accurately present the Sellers' revenues, expenses, assets, liabilities, financial position and other information set forth therein."  The Sellers also represented that "to their knowledge, [they] have no liability or obligation, absolute or contingent, which they have not disclosed to Buyer" and that these defendants operated the

practices "in compliance with all applicable laws, rules, regulations and ordinances prior to the Closing."

The Sellers further warranted that they had delivered "true, correct and complete" copies of all medical records including patient charts and billing information and that those records had "been maintained in the ordinary course of business in accordance with sound business practices." Furthermore, Aranbayev, Diamante, and Paradise warranted that they had no knowledge of any intention by any patient or client to discontinue its relationship with the practices or to decrease its level of business. Finally, they warranted that there was no fact known which adversely affects the businesses and which had not been set forth in the PC Purchase Agreement or schedules thereto.

In opposition to the motion to dismiss, plaintiffs point to several decisions in which the Pennsylvania Superior Court refused to dismiss fraudulent inducement claims based on the gist of the action doctrine. See Telwell, Inc. v. Grandbridge Real Estate Capital LLC, 143 A.3d 421, 428-30 (Pa. Super. 2016); Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 718-19 (Pa. Super. 2005). However, neither those cases nor any precedent handed down by the Pennsylvania Supreme Court stand for the proposition that such claims are never

barred under the doctrine.  Instead, as the Pennsylvania

Superior Court has recognized:

> [C]ourts have <u>not</u> carved out a categorical
> exception for fraud, and have not held that
> the duty to avoid fraud is always a
> qualitatively different duty imposed by
> society rather than by the contract itself.
> Rather, the cases seem to turn on the
> question of whether the fraud concerned the
> performance of contractual duties.  If so,
> then the alleged fraud is generally held to
> be merely collateral to a contract claim for
> breach of those duties.  If not, then the
> gist of the action would be the fraud,
> rather than any contractual relationship
> between the parties.

eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 19

(Pa. Super. 2002).

Under the facts presented here and the clear language

of the contracts at issue, we find that plaintiffs' claims are

indeed barred by the gist of the action doctrine.  All of the

misrepresentations and omissions alleged by plaintiffs in

support of their fraud claim relate to duties to disclose

information imposed under the warranties and representations

section of the contracts.  Thus, plaintiffs' fraud claim does

not arise out of any social duty but rather the obligations and

warranties imposed by the contract.

Accordingly, the motion of defendants to dismiss the

fraud claim in Count III of the amended complaint will be

granted.

In Count IX, plaintiff Dental Wizard PC asserts a claim against all defendants for conversion. In support of this claim, Dental Wizard PC asserts that after the January 11, 2018 closing, defendants stole, destroyed, and converted certain historical patient records and other data acquired under the PC Purchase Agreement.

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 659 n.3 (Pa. Super. 2000) (quoting Stevenson v. Economy Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)).

For the reasons discussed above in connection with plaintiffs' fraud claim, plaintiffs' conversion claim is precluded under the gist of the action doctrine. "[A] party cannot prevail on its action of conversion when the pleadings reveal merely a damage claim for breach of contract." Neyer, Tiseo & Hindo, Ltd. v. Russell, No. 92-2983, 1993 WL 53579, at *4 (E.D. Pa. Mar. 2, 1993). Plaintiffs' entitlement to the data allegedly converted arises under the PC Purchase Agreement. Under that Agreement, Diamante, Paradise, and Aranbayev agreed to sell patient records and other data to Dental Wizard PC. Any

-15-

destruction of the data would be a breach of that Agreement.

Thus, the motion to dismiss Count IX will be granted.

VII

We now consider plaintiffs' claim in Count VII for

tortious interference with contracts and business relations.

Under Pennsylvania law, a cause of action for tortious

interference with contractual relations has the following

elements:

> (1) the existence of a contractual, or
> prospective contractual relation between the
> complainant and a third party;
> (2) purposeful action on the part of the
> defendant, specifically intended to harm the
> existing relation, or to prevent a
> prospective relation from occurring; (3) the
> absence of privilege or justification on the
> part of the defendant; and (4) the
> occasioning of actual legal damage as a
> result of the defendant's conduct.

CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357

F.3d 375, 384 (3d Cir. 2004) (quoting Crivelli v. Gen. Motors

Corp., 215 F.3d 386, 394 (3d Cir. 2000)); see also Pawlowski v.

Smorto, 588 A.2d 36, 39-40 (Pa. Super. 1991).

In the amended complaint, plaintiffs allege that

defendants interfered with their actual or prospective

contractual and business relationships with insurers and other

third-party payors, including Avesis, and with patients and

staff through their unlawful conduct related to rendering

medically unnecessary or improper treatment and fraudulent

-16-

billing.  This conduct occurred as early as 2015.  For example,
plaintiffs allege that Avesis began rejecting all or
substantially all of the claims submitted by Diamante and
Paradise for services rendered in summer or early fall of 2017
and that in or around late 2017, Avesis denied credentialing to
many of the dentists in that practice.  By letter dated June 1,
2017, Diamante and Paradise were put on review by payor Dental
Benefits Providers, an affiliate of United Healthcare Services,
Inc.  Defendants were also notified on October 31, 2017 that
payor Keystone First was auditing and/or investigating Diamante.
In contrast, plaintiffs did not approach defendants and begin
negotiations and due diligence regarding the purchase of
Diamante and Paradise until late 2017 and did not close on the
sale until January 11, 2018.

        At the time that these events occurred, defendants
still owned and/or operated Paradise and Diamante and were
engaged themselves in contractual and business relationships
with the insurers/third-party payors, patients, and dentists
with which plaintiffs allege defendants interfered.  Any intent
of defendants to commit these alleged acts was based on a desire
to increase their own profits, not a desire to interfere with
plaintiffs' contracts and business.  This conduct began well
before plaintiffs entered negotiations to purchase Diamante and
Paradise, and thus defendants could not have formed a specific

intent to harm plaintiffs as required to state a claim for tortious interference.  See Glenn v. Point Park Coll., 272 A.2d 895, 899 (Pa. 1971).

Accordingly, plaintiffs' claim for tortious interference in Count VII will be dismissed.

VIII

In Count XI, plaintiffs allege a claim for civil conspiracy against all defendants.  To state such claim, a plaintiff must allege:  "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  Strickland v. Univ. of Scranton, 700 A.2d 979, 987–88 (Pa. Super. 1997) (quoting Smith v. Wagner, 588 A.2d 1308, 1311–12 (Pa. Super. 1991)).

A civil conspiracy claim is not an independent tort but instead depends upon the commission of an underlying tortious act.  Breach of contract is not a tort and thus cannot serve as the basis for a civil conspiracy claim.  See Acclaim Sys., Inc. v. Infosys, Ltd., No. 13-7336, 2015 WL 4257463, at *5 (E.D. Pa. July 14, 2015) (citing Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 664 (3d Cir. 1993)).  Moreover, because we are dismissing plaintiffs' fraud, conversion, and

tortious interference claims, those causes of action cannot serve as underlying torts.

Accordingly, the motion to dismiss will be granted as to plaintiffs' claim for civil conspiracy in Count XI.

IX

We now turn to plaintiffs' claims for breach of the purchase agreements in Counts IV, V, and VII. In Count IV, plaintiff Dental Wizard PC alleges that defendants Aranbayev, Martirosyan, Diamante, Paradise, and Dental Empire breached their obligations under the PC Purchase Agreement. Specifically, Count IV asserts a violation of Section 4 of the PC Purchase Agreement, in which the "Sellers and Sellers' Shareholder" made certain representations and warranties regarding the dental practices being sold. It also asserts that these defendants violated Section 5 of the PC Purchase Agreement, in which the "Sellers, Sellers' Shareholder and Sellers' Managers" agreed to render certain post-closing transition services and Section 8, which provides that the parties shall provide further assurances. Defendants assert that Count IV should be dismissed as to defendants Dental Empire and Martirosyan because they are not parties to the PC Purchase Agreement.

The PC Purchase Agreement defines "Sellers" as Diamante and Paradise and "Sellers' Shareholder" as Aranbayev.

Dental Empire and Martirosyan are included in the Agreement as the "Sellers' Managers." Dental Empire and Martirosyan executed the Agreement with an acknowledgment that they were bound by "*inter alia*, Section 7," which concerns obligations of non-competition and non-solicitation to Dental Wizard PC. Because "*inter alia*" means "among other things," we do not interpret the execution of Dental Empire and Martirosyan to be limited to Section 7 but instead to include other provisions of the PC Purchase Agreement which address the obligations that concern "Sellers' Managers." Accordingly, we will deny the motion to dismiss Count IV as to them.

In Count V, plaintiff Dental Wizard Holding claims that Aranbayev, Diamante, and Paradise breached the Holding Purchase Agreement. In particular, plaintiff asserts that these defendants violated Sections 4, 5, and 7 of the Holding Purchase Agreement. Under the Holding Purchase Agreement, these defendants agreed to sell certain "Sale Assets," which are defined as "machinery, office equipment, computer hardware, furniture, fixtures, office supplies, and other tangible personal property and assets owned by Sellers which relate to Sellers' Business." The Holding Purchase Agreement specifically excludes the assets purchased pursuant to the PC Purchase Agreement. Plaintiffs have not pleaded any facts in the amended complaint to suggest that there was any breach of the Holding

-20-

Purchase Agreement as to these "Sale Assets."  However, the
Holding Purchase Agreement also contains a representations and
warranties provision in Section 4, as well as a duty under
Section 5 to provide post-closing transition services, and an
indemnification provision under Section 6.  These provisions are
not limited to the "Sale Assets" but instead appear to include
duties regarding the overall business of Diamante and Paradise.
The motion to dismiss Count V will be denied.

Finally, in Count VII, both plaintiffs assert a claim
against all defendants except Chistyakova for contractual
indemnification.  Both purchase agreements provide that "Sellers
and Sellers' Shareholder shall jointly and severally indemnify,
defend and hold [plaintiffs] harmless" against losses arising
under certain circumstances.  As explained above, both
agreements define "Sellers" as Diamante and Paradise and
"Sellers' Shareholder" as Aranbayev.  Dental Empire and
Martirosyan are defined as "Sellers' Managers" and thus are not
included in the indemnification obligations of Count VII.  We
therefore will dismiss Count VII as to Dental Empire and
Martirosyan.

X

Plaintiffs allege in Count VI a claim against
Chistyakova for aiding and abetting a breach of contract.
Specifically, plaintiffs allege that Chistyakova, who is not a

party to either of the purchase agreements, aided and abetted the breach of those agreements by the other defendants by creating false records related to patient treatment services and other aspects of the dental practices' operation.

Plaintiffs have not cited any authority for the proposition that aiding and abetting a breach of contract is a tort recognized in Pennsylvania. See Acclaim Sys., Inc., 2015 WL 4257463, at *5. Under Pennsylvania law, a defendant may be liable for aiding and abetting only if there is an underlying tortious or illegal act. Id.; see also Allegheny Gen. Hosp., 228 F.3d at 446. As stated above, breach of contract is not a tort nor an illegal act. Acclaim Sys., Inc., 2015 WL 4257463, at *5; see also Windsor Sec., Inc., 986 F.2d at 664 (citing Glazer v. Chandler, 200 A.2d 416, 418 n.1 (Pa. 1964)). Therefore, the motion of defendants to dismiss Count VI of the complaint will be granted.

XI

In Count X, plaintiffs allege a claim against all defendants for unjust enrichment. Under Pennsylvania law, "the doctrine of unjust enrichment contemplates that '[a] person who has been unjustly enriched at the expense of another must make restitution to the other.'" Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (quoting Binns v. First Nat'l Bank of Ca., 80 A.2d 768, 775 (Pa. 1951)). Defendants assert

that this claim should be dismissed because a party is prohibited from recovering under the theory of unjust enrichment if the relationship between the parties is governed by written contract.  See id.

Plaintiffs are correct that generally claims for unjust enrichment and breach of contract may be pleaded in the alternative.  See Fed. R. Civ. P. 8(d)(2) & (3).  However, "[c]ourts typically allow a plaintiff to plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists."  Montanez v. HSBC Mortg. Corp., 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012) (citing Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 527-28 (E.D. Pa. 2012)).  Here there is no dispute that written contracts exist.  In fact, both the PC Purchase Agreement and the Holding Purchase Agreement were attached to the amended complaint.  Plaintiffs' unjust enrichment claim thus will be dismissed.

XII

In Count XII, plaintiffs allege a claim against all defendants for piercing the corporate veil.  Veil piercing is not a separate cause of action, but rather a basis for imposing liability against particular individuals or entities.  Accurso v. Infra-Red Servs., Inc., 23 F. Supp. 3d 494, 510 (E.D. Pa.

2014).  It appears that plaintiffs seek to use this theory of

liability to hold Aranbayev, Martirosyan, and Chistyakova

personally liable for any judgment imposed here, as well as to

hold liable defendant Dental Empire and other non-party dental

practices owned and/or operated by Aranbayev, Martirosyan, and

Chistyakova.

Pennsylvania law recognizes a strong presumption

against piercing the corporate veil.  See Lumax Indus., Inc. v.

Aultman, 669 A.2d 893, 895 (Pa. 1995).  Generally, piercing of

the corporate veil is permitted in situations where there

exists:

> gross undercapitalization, failure to
> observe corporate formalities, nonpayment of
> dividends, insolvency of debtor corporation,
> siphoning of funds from the debtor
> corporation by the dominant stockholder,
> nonfunctioning of officers and directors,
> absence of corporate records, and [where]
> the corporation is merely a facade for the
> operations of the dominant stockholder.

Pearson v. Component Tech. Corp., 247 F.3d 471, 484–85 (3d Cir.

2001); see also Lumax Indust., Inc., 669 A.2d at 895.

Defendants assert that plaintiffs have not pleaded

sufficient facts to support their claim for piercing the

corporate veil.  Although veil-piercing is not a separate cause

of action, but rather a theory of liability, on a motion to

dismiss, a court "must examine . . . whether the facts pleaded

. . . state a cause of action on a theory of piercing the

corporate veil." Accurso, 23 F. Supp. 3d at 510 (quoting Lumax Indust., Inc., 669 A.2d at 895). It is true that "[a]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in Twombly, such averments cannot support a veil-piercing claim." Id. (quoting Cent. Transp., LLC v. Atlas Towing, Inc., 884 F. Supp. 2d 207, 217 (E.D. Pa. 2012)).

Plaintiffs have alleged that Aranbayev, Martirosyan, and Chistyakova are owners or de facto owners of all or substantially all of Diamante, Paradise, Dental Empire, and other dental practices in the Philadelphia area, that they comingled their personal funds and the funds of the dental practices they owned or operated, that they fraudulently transferred funds between their dental practices to manipulate their financial performance and to avoid paying taxes or other debts, that they failed to maintain corporate records and formalities, and that they rendered their dental practices inadequately capitalized.

In further support of their claim, plaintiffs have alleged that "[d]efendants used the dentists employed by [Paradise and Diamante] to service their other dental office entities . . . without compensating [Paradise and Diamante]." Plaintiffs also allege that all individual defendants shared in

the proceeds paid by plaintiffs under the purchase agreements as if they were all shareholders of Diamante and Paradise.

We conclude that these allegations are sufficient to allow plaintiffs to procced at this time with their efforts to pierce the corporate veil.  Accordingly, the motion of defendants to dismiss Count XII will be denied.